## HILLSBORO COAL CO. et al. v. KNOTTS, U. S. Dist. Atty., et al.

(District Court, S. D. Illinois, S. D. November 8, 1920.)

No. 105.

1. **Constitutional law ☞258—Criminal law ☞13—Lever Act, § 9, not unconstitutional, as depriving persons of liberty without due process of law.**
   In section 9 of the Lever Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛i), making it an offense for any person to conspire or combine with another "(a) to limit the facilities for transporting, producing, * * * or dealing in any necessaries; (b) to restrict the supply of any necessaries; (c) to restrict the distribution of any necessaries; (d) to prevent, limit, or lessen the manufacture or production of any necessaries in order to enhance the price thereof"—the qualifying phrase, "in order to enhance the price thereof," applies to all the preceding subdivisions, and as so construed is not unconstitutional, as being so indefinite as to deprive those charged thereunder of their liberty without due process, or as not informing them of the nature and cause of the accusation.

2. **Conspiracy ☞23—Section 9 of Lever Act not superseded as applied to production of coal.**
   Section 9 of the Lever Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛i), making unlawful conspiracies to enhance the price of necessaries, *held* not superseded as respects coal by section 25, providing for federal administration of coal production and sale.

3. **Injunction ☞105(1)—Equity without jurisdiction to enjoin criminal prosecution.**
   A court of equity is without jurisdiction to enjoin a criminal prosecution under a sufficient indictment based on a valid statute.

In Equity. Suit by the Hillsboro Coal Company and Rice Miller against Edward C. Knotts, United States District Attorney for the Southern District of Illinois, and others. On motion by complainants for preliminary injunction, and by defendants to dismiss bill. Motion for injunction denied, and motion to dismiss granted.

Graham & Graham, of Springfield, Ill., and Butler, Lamb, Foster & Pope, of Chicago, Ill., for plaintiffs.

Dan W. Simms, Sp. Asst. U. S. Atty., of La Fayette, Ind., and L. Ert Slack, Sp. Asst. Atty. Gen., of Indianapolis, Ind., for defendants.

FITZHENRY, District Judge. This cause is submitted upon plaintiffs' motion for a preliminary injunction and defendants' motion to dismiss the bill of complaint for want of jurisdiction and want of equity. The individual plaintiff is one of a large number of defendants indicted by a grand jury of the United States District Court for the District of Indiana in the case of United States v. Armstrong et al., 265 Fed. 683, charging that the defendants violated various sections of "An act to provide for the national security and defense by encouraging the production, conserving the supply and controlling the distribution of food products and fuel," approved August 10, 1917, known as the Lever Law, and section 2 of the amendatory Act of October 22, 1919 (41 Stat. 297).

[1] At the time of the hearing a supplemental bill was filed, reciting that certain defendants named in the indictment had demurred to the indictment and moved to quash it; that Judge Anderson, the presiding judge of that court, had allowed the motion to quash as to all of the counts in the indictment, except counts 1, 2, 3, 4, and 17. All of these remaining counts attempt to charge the defendants, of which the individual plaintiff herein is one, with violations of section 9 of the Act of August 10, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛i). We are here concerned only with section 9 of that act. It is charged that the section is unconstitutional, and that the defendants are or are threatening to commit acts beyond the scope of their authority.

Is section 9 of the Act of August 10, 1917, unconstitutional? In very able and interesting briefs counsel for plaintiffs argue that it is, on the ground that it is violative of the Fifth and Sixth Amendments to the Constitution. The Lever Act is a measure passed by Congress in the exercise of its extraordinary war powers, and plaintiffs complain more of an abuse than a lack of power in its enactment.

It is charged that section 9 is void, because it is so vague and indefinite that it does not constitute "due process" under the requirements of the Fifth Amendment to the Constitution. Section 9 is as follows:

"That any person who conspires, combines, agrees, or arranges with any other person (a) to limit the facilities for transporting, producing, manufacturing, supplying, storing, or dealing in any necessaries; (b) to restrict the supply of any necessaries; (c) to restrict the distribution of any necessaries; (d) to prevent, limit, or lessen the manufacture or production of any necessaries in order to enhance the price thereof shall, upon conviction thereof, be fined not exceeding $10,000 or be imprisoned for not more than two years, or both."

In the conduct of any potential enterprise, numerous operations which are not unlawful, but wholesome, require the limiting of facilities or means of transporting, producing, manufacturing, supplying, storing, or dealing in necessaries, involving restrictions of the supply and the distribution of commodities.

Plaintiffs contend to attempt to live within the apparent provisions of this act would amount to a destruction of their business; that there would be no way of anticipating just when they would be operating within their rights and not in violation of the statute; that, in fact, they never would know until a jury would determine those matters by saying by their verdict when a defendant was guilty or not guilty of the crime charged. There is some merit in these contentions. The reasonableness of the criticism of the statute appears to be sustained when one interprets it to state:

"That any person who conspires * * * or arranges with any other person to limit the facilities for transporting, * * * storing, or dealing in any necessaries" shall be fined, etc.

If that were the correct interpretation of the law, the manager and superintendent of a coal mine, who deemed it advisable to shut down the mine for necessary repairs and agreed upon such action, would

transgress the law and be punishable for violating its provisions. Manifestly, Congress never intended to make the limiting of the facilities for the production of coal as suggested in this illustration a crime. Nor would it add much to the strength of the law to interpret a limitation of its operation by an application of the "rule of reason."

What Congress undoubtedly intended to do, in section 9, was to make it unlawful for any person to conspire or agree with any other person to do the things prohibited with reference to necessaries "in order to enhance the price thereof." It was, of course, known to Congress, when this section was written, that when a coal mine is shut down temporarily for the purpose of making necessary repairs, that ordinarily the general production of the mine is stimulated and increased, and the same illustration would apply as well to the operation of almost any enterprise engaged in the production or distribution of necessaries. The purpose of the act was to prevent the people from being imposed upon during a time when the country was in the throes of war, battling for its own existence. It knew that the law of supply and demand, in a period of great national emergency, would naturally enhance the price of necessaries to the limit of the capacity of the public to pay, without those who were engaged in the industries of transporting, producing, manufacturing, etc., necessaries conspiring to further enhance the public burden. It was sought by Congress to make it a crime to conspire with intent to raise the price of necessaries.

If there be uncertainty or vagueness about the congressional act, it is obviated by merely inserting a comma after the word "necessaries" in item (d) of section 9, so that the item will read "to prevent, limit, or lessen the manufacture or production of any necessaries, in order to enhance the price thereof shall, upon conviction, * * *" etc. The qualifying phrase, "in order to enhance the price thereof," then literally applies to and is a part of items (or paragraphs) (a), (b), and (c), as well as (d), which it follows. Punctuation is a minor, and not a controlling, element in interpretation, and courts will disregard the punctuation of a statute, or repunctuate it, if need be, to give effect to what otherwise appears to be its purpose and true meaning. Hammock v. Loan & Trust Co., 105 U. S. 77, 84, 26 L. Ed. 1111; United States v. Lacher, 134 U. S. 624, 628, 10 Sup. Ct. 625, 33 L. Ed. 1080; United States v. Oregon, etc., Railroad, 164 U. S. 526, 541, 17 Sup. Ct. 165, 41 L. Ed. 541; Ford v. Delta, etc., Co., 164 U. S. 662, 674, 17 Sup. Ct. 230, 41 L. Ed. 590; Stephens v. Cherokee Nation, 174 U. S. 445, 480, 19 Sup. Ct. 722, 43 L. Ed. 1041; Sutherland, Statutory Construction, § 232.

By reading the limitation, "in order to enhance the price thereof," into each of the provisions of the preceding subsections (a), (b), and (c), as well as (d), of section 9, it becomes fully as clear, specific, and precise as the general Conspiracy Act. Criminal Code, § 37, Rev. Stat. § 5440; section .10201, U. S. Comp. Stat. 1916. By the Conspiracy Act it is made a crime for two or more persons to conspire "to commit any offense against the United States," or "to defraud the United States in any manner or for any purpose." These quoted

phrases are all-inclusive, but no more specific than section 9 of the Lever Law.

An examination of the counts 1, 2, 3, and 17 in the indictment in the Armstrong Case suggests that the pleader did not consider that the clause, "in order to enhance the price thereof," applied to the things enumerated in items (a), (b), and (c), as well as (d). Section 9 is susceptible of the broad construction placed upon it by the plaintiffs in this case, and to read it as it was undoubtedly interpreted by the pleader in counts 1, 2, 3, and 17 would raise grave questions as to the constitutionality of the act. However, to read it as above suggested removes the vagueness and much of the uncertainty of the provisions complained of. The Supreme Court had a similar question before it in the case of United States ex rel., etc., v. Delaware & H. Co., 213 U. S. 366, 29 Sup. Ct. 527, 53 L. Ed. 836. Chief Justice White said:

"It is elementary when the constitutionality of a statute is assailed, if the statute be reasonably susceptible of two interpretations, by one of which it would be unconstitutional and by the other valid, it is our plain duty to adopt that construction which will save the statute from constitutional infirmity. Knights Templars' & M. Life Indemnity Co. v. Jarman, 187 U. S. 197, 205. And unless this rule be considered as meaning that our duty is to first decide that a statute is unconstitutional, and then proceed to hold that such ruling was unnecessary because the statute is susceptible of a meaning which causes it not to be repugnant to the Constitution, the rule plainly must mean that, where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise, and by the other of which such questions are avoided, our duty is to adopt the latter. Harriman v. Interstate Commerce Commission, 211 U. S. 407."

It is the judgment of the court that the constitutionality of section 9 must be sustained. It is apparent from the record in this case that the learned judge of the United States court for the district of Indiana has overruled demurrers to all of the counts brought before the court by plaintiffs' bill, and we are disposed to adopt his construction of the legal sufficiency of the several counts. However, there can be no question as to the legal sufficiency of count 4, which charges that the individual plaintiff and the other persons named as defendants in the indictment, at the times in question, within the district of Indiana, did "feloniously conspire * * * and agree together and with divers other persons whose names are unknown * * * to prevent, limit, and lessen the production of a certain necessary, to wit, bituminous coal, in order to enhance the price thereof," by doing certain prohibited acts.

A conspiracy to enhance the price of necessaries is the gist of the crime created by section 9, and is clearly within the Fifth and Sixth Amendments to the Constitution. The gist of the crime as charged in the indictment is a conspiracy to enhance the price of necessaries within the district of Indiana between the 10th day of August, 1917, and the 21st day of October, 1919. It is well settled that the accused is informed of the nature and cause of the accusation, within the requirements of the Sixth Amendment, if the indictment contains such a description of the offense charged as will enable him to make his defense and plead the judgment in bar. Shepard v. United States, 160 Fed. 584, 87 C. C. A. 486; same case, 212 U. S. 571, 29 Sup. Ct. 682, 53

L. Ed. 655. This indictment, it seems, would cover any conspiracy to enhance the price of coal in which the individual plaintiff may have participated, directly or indirectly, in the state of Indiana, from the date of the passage of the law until its amendment on the 22d day of October, 1919, and a conviction under it certainly could be pleaded in bar to any subsequent indictment for the same offense.

[2] It is contended that, if section 9 is constitutional, it does not apply to the conduct of the individual plaintiff and the other defendants in the Armstrong Case, for the reason that they are coal operators and miners, and during all of the times in question were operating their businesses under the complete control and direction of the United States Fuel Administration, which was created, given authority, and was acting under and by virtue of the same statute of which section 9 is a part. Section 25 of the Act of August 10, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛q), provides for the complete regulation and control of the coal-mining industry, the fixing of the price of coal, regulating production, management, and the transportation and distribution of coal, and, in fact, doing everything necessary and proper in the judgment of the President or the Fuel Administration, even to the extent of actually taking over the operation of a coal mine. Section 25 is the only section of the Lever Law dealing exclusively with coal, and therefore section 9, applying to necessaries and being general in its scope, the former being specific, supersedes section 9 in so far as those who are engaged in the industry are concerned.

While section 25 is very complete in its provisions with reference to the regulation and control of the coal industry, and carries its own special penalties for violations of the provisions of the act, or a violation of the orders of the Fuel Administration, yet there is nothing in the latter section with reference to the subject of conspiracy. Section 9 applies exclusively to conspiracies to enhance the price of necessaries, whether the crime is committed either within or without the coal industry. Within the provisions of section 9, as the court reads it, there is a measure of protection for any conspiracies or agreements made in obedience to, or to secure a compliance with, the orders and regulations of the Fuel Administration and acts done within the control of section 25.

It is undoubtedly the rule that, where there is in the same statute a particular enactment and also a general one, which in its most comprehensive sense would include what is embraced in the former, the particular enactment must be operative, and the general enactment must be taken to affect only such cases within the general language as are not within the provisions of the particular statute. United States v. Chase, 135 U. S. 255, 10 Sup. Ct. 756, 34 L. Ed. 117; Rodgers v. United States, 185 U. S. 83, 22 Sup. Ct. 582, 46 L. Ed. 816. The contention that section 25 supersedes section 9, however, cannot be sustained, for the latter is fully as specific and exclusive on the subject of conspiracies to enhance prices as the former is specific upon the regulation and control of the coal industry.

[3] The statute which the individual plaintiff is charged with hav-

273 F.—15

ing violated being valid, and the indictment making the charge being legally sufficient, it becomes apparent that this case comes squarely within the rule that a court of equity, although having jurisdiction over persons and property in a case pending before it, is not thereby vested with jurisdiction over crimes committed in dealing with such property by a person before the civil suit was brought, and cannot restrain by injunction proceedings regularly brought in a criminal court having jurisdiction of the crime and of the accused. Harkrader v. Wadley, 172 U. S. 148, 19 Sup. Ct. 119, 43 L. Ed. 399. In proceedings by indictment to enforce a criminal statute, the government can only act by its officers, and to enjoin the latter is to enjoin the government. In re Ayers, 123 U. S. 443, 8 Sup. Ct. 164, 31 L. Ed. 216.

The bill in this case is voluminous, and endeavors to show that the indictment in the case of United States v. Armstrong et al. (D. C.) 265 Fed. 683, was returned by the grand jury of the Indiana court upon evidence of certain acts of the individual plaintiff and others engaged in the coal industry in obedience to the orders of the President and the Fuel Administrator, acts which the defendants in the criminal case were required to perform. It is contended that, unless the agreements entered into in compliance with the order, direction, and approval of the President or Fuel Administrator, set forth in the bill, were so interpreted and construed as to constitute the alleged conspiracies mentioned in the indictment, neither of the plaintiffs has at any time conspired, confederated, arranged, or agreed with the other individuals named in the indictment, or with any other persons whatsoever, as alleged in said indictment, or any count thereof, and the plaintiffs deny that either of them has committed any of the offenses which are attempted to be charged in said indictments.

Of course, neither this court, nor the plaintiffs know what evidence was brought to the attention of the grand jurors in Indiana, nor can this court presume to conjecture as to what proof the government may be able to offer in support of its claim that the defendants in the Armstrong Case are guilty of the crime with which they are charged. It is well settled that a court of equity has no jurisdiction over the prosecution, the punishment, or the pardon of crimes or misdemeanors. In re Sawyer, 124 U. S. 200, 210, 8 Sup. Ct. 482, 31 L. Ed. 402.

The court being of the opinion that section 9 is constitutional, that it is not superseded in its operation upon the individual plaintiff herein by section 25, and that the indictment is legally sufficient, it becomes unnecessary to pass upon the numerous other questions raised upon the hearing by counsel and so ably presented. In the light of these views as to the substantial questions involved, it is clear that this court has no jurisdiction to enjoin the defendants in the performance of their official duties.

The motion for a preliminary injunction will be denied, and the motion to dismiss will be allowed.