BISHOP, J.
 

 Appellant was convicted, by his plea of guilty, of selling a six-pound can of Crisco at less than cost for the purpose of injuring his competitors and destroying competition. From the judgment fining him $500 and im
 
 *Supp. 761
 
 posing a six months’ term of imprisonment (suspended), he has appealed, contending that the provisions of the statute passed to make his act a public offense (see. 3, Unfair Practices Act, Stats. 1935, p. 1546) are unconstitutional. With this contention we do not agree; we are of the opinion .that the judgment should be affirmed.
 

 Section 3 of the Unfair Practices Act reads as follows:
 

 “Sec. 3. It shall be unlawful for any person, partnership, firm, corporation, joint stock company, or other association engaged in business within this State, to sell, offer for sale or advertise for sale any article or product, or service or output of a service trade, at less than the cost thereof to such vendor, or give, offer to give or advertise the intent to give away any article or product, or service or output of a service trade for the purpose of injuring competitors and destroying competition, and he or it shall also be guilty of a misdemeanor, and on conviction thereof shall be subject to the penalties set out in section 11 of this act for any such act.
 

 “The term ‘cost’ as applied to production is hereby defined as including the cost of raw materials, labor and all overhead expenses of the producer; and as applied to distribution ‘cost’ shall mean the invoice or replacement cost whichever is lower, of the article or product to the distributor and vendor plus the cost of doing business by said distributor and vendor.
 

 “The ‘cost of doing business’ or ‘overhead expense’ is defined as all costs of doing business incurred in the conduct of such business and must include without limitation the following items of expense: labor (including salaries of executives and officers), rent, interest or borrowed capital, depreciation, selling cost, maintenance of equipment, delivery costs, credit losses, all types of licenses, taxes, insurance and advertising. ’ ’
 

 The giving away of articles or service is not made unlawful, it plainly appears, unless done for the purpose of injuring competitors and destroying competition. It is not so clear that this purpose must be present in order that the act of selling below cost be a public offense. The absence of a comma after the second appearance of the words “service trade” clearly links the purpose to the act of giving away, but makes possible the argument that the purpose has
 
 *Supp. 762
 
 no relation to selling below cost. It is our opinion, however, that selling below cost is not made a public offense except where it is done for the purpose, that is, with the specific intent, of injuring competitors
 
 and
 
 destroying competition. .
 

 Several rules of construction unite in leading us to this conclusion. The first is enunciated in
 
 Porto Rico Ry. etc. Co.
 
 v.
 
 Mor,
 
 (1920) 253 U. S. 345 [40 Sup. Ct. 516, 64 L. Ed. 944], where the omission of a comma between the qualifying clause and the words immediately preceding gave rise to the argument that the clause was applicable only to the pearest group of words and not to those first appearing and separated from those later used by a comma. In answer to the argument the Supreme Court stated: “When several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all.” The phrase “for the purpose of injuring competitors and destroying competition” is as applicable to the words dealing with selling below cost as it is to those having to do with making gifts. An even stronger case, considering this same problem of statutory construction, and arriving at the same conclusion, is
 
 Hillsboro Coal Co.
 
 v.
 
 Knotts,
 
 (1920) 273 Fed. 221.
 

 Our statement that the phrase quoted is applicable to both sales and gifts becomes clear when we consider the next rule of construction which is expressed in 23 California Jurisprudence, page 764, and quoted in
 
 In re Sekuguchi,
 
 (1932) 123 Cal. App. 537, 538 [11 Pac. (2d) 655] : “Every statute and code section should be construed with reference to its purpose and the objects intended to be accomplished by it. The language will be so interpreted, if possible, as to aid the design and intent of the legislature and to effectuate the evident objects and purposes of the law.” As appears throughout the statute spread before us, the legislature was not solicitous lest someone in business lessen his profits by selling below cost or by giving away his substance. It is implicit throughout the act that the concern of the legislature is that which it explicitly stated in section 13: “The Legislature declares that the purpose of this act is to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition, by prohibiting unfair and discriminatory practices by which fair and honest com
 
 *Supp. 763
 
 petition is destroyed or prevented. This act shall be literally
 
 (sic)
 
 construed that its beneficial purposes may be sub-served.” We reiterate, therefore, that the legislature intended to declare and has declared that selling below cost is a misdemeanor only when accomplished for the purpose of destroying competition and injuring one’s competitors.
 

 Furthermore, in so far as this interpretation, which as we have seen is a reasonable one, aids in presenting a statute not in conflict with either the state or federal Constitution, it is to be adopted rather than a construction which would result in the existence of an unconstitutional enactment. See the plethora of cases cited in 5 California Jurisprudence, page 615. As we test the statute, therefore, to see if it runs afoul of any of the constitutional objections made, we shall read it as prohibiting selling below cost only when done to injure competitors and to destroy competition. We shall also keep in mind section 6 of the act, which makes these exceptions :
 

 ‘‘Sec. 6. The provisions of sections 3, 4 and 5 shall not apply to any sale made:
 

 (a) In closing out in good faith the owner’s stock or any part thereof for the purpose of discontinuing his trade in any such stock or commodity, and in the case of the sale of seasonal goods or to the
 
 tona fide
 
 sale of perishable goods to prevent loss to the vendor by spoilage or depreciation, provided notice is given to the public thereof;
 

 (b) When the goods are damaged or deteriorated in quality, and notice is given to the public thereof;
 

 (c) By an officer acting under the orders of any court;
 

 (d) In an endeavor made in good faith to meet the legal prices of a competitor as herein defined selling the same article or product, or service or output of a service trade, in the same locality or trade area.”
 

 Our province in attacking the problems presented by this appeal is clearly marked. Answers to such questions as: Is unlimited competition best for the public welfare? Should competition be regulated by the state? Should monopolies be fostered? are for the legislature and not the courts to give. When, the legislature having made answer by the enactment of a statute, the rights of individuals are presented to the courts for adjudication, based on that statute, its validity is not to be tested by the court’s idea
 
 *Supp. 764
 
 of the wisdom or folly of its provisions, nor is it to be declared invalid because contrary to the law of supply and demand or any other economic law. The statute, embodying the legislature’s judgment, is presumed valid and is to be given full effect unless it is plainly in conflict with a provision of the state or of the federal Constitution. These, in our present system of government, are still supreme.
 

 We have no hesitancy in holding that, generieally, legislation prohibiting unfair competition and preventing acts-which stifle competition, is well within the surveyed limits of the police power. The recent case of
 
 Max Factor & Co.
 
 v.
 
 Kunsman,
 
 (1936) 5 Cal. (2d) 446 [55 Pac. (2d) 177], sets the question at rest so far as the courts of this state are concerned. The stamp of approval of the United States , Supreme Court may be found in
 
 Central Lumber Co.
 
 v.
 
 State,
 
 (1912) 226 U. S. 157 [33 Sup. Ct. 66, 57 L. Ed. 164, 165]. See, also,
 
 State
 
 v.
 
 Central Lumber Co.,
 
 (1909) 24 S. D. 136 [123 N. W. 504, 42 L. R. A. (N. S.) 804] ;
 
 State
 
 v.
 
 Fairmont Creamery Co.,
 
 (1911) 153 Iowa, 702 [133 N. W. 895, 42 L. R. A. (N. S.) 821] ;
 
 Sears, Roebuck & Co.
 
 v.
 
 Federal Trade Com.,
 
 (1919) 258 Fed. 307 [6 A. L. R. 358], In
 
 Nebbia
 
 v.
 
 New York,
 
 (1933) 291 U. S. 502, 526 [54 Sup. Ct. 505, 78 L. Ed. 940, 950, 89 A. L. R. 1469]., the statement appears: “Laws passed ... to secure fair trade practices . . . have been found consistent with due process.” Later we find (p. 529 or 953), “Legislation concerning sales of goods, and incidentally affecting prices, has repeatedly been held valid. In this class fall laws forbidding unfair competition by the charging of lower prices in one locality than those exacted in another, by giving trade inducements to purchasers, and by other forms of price discrimination.”
 

 Nor do we entertain any serious doubt that, in its endeavor to protect the public from the evil effects of unfair trade practices, the legislature’s determination that sales below cost as here prohibited constitute an economic evil which should be curbed, is a conclusion which we may not question if we would. See cases,
 
 supra,
 
 and
 
 Economic Gas Co.
 
 v.
 
 Los Angeles,
 
 (1914) 168 Cal. 448 [143 Pac. 717, Ann. Cas. 1916A, 931]. We certainly do not recognize the .constitutional right of any man to sell his goods without profit ¡to himself for the purpose of injuring his neighbor.
 

 
 *Supp. 765
 
 Appellants’ remaining attack upon the statutory provisions, without which his conviction would have no foundation, is that the “cost” below which he is forbidden to sell, is left so uncertain that one cannot tell where the legislature has drawn the line between that which is lawful and that which is unlawful. - It must be conceded that in many cases it is going to be extremely difficult to determine what the cost of an article is. We are of the opinion, however, that the difficulty will be a factual one, that of discovering the cost, as a truth, and not a legal one, that of discovering what the legislature meant by the term. A statute is, of course, not to be declared invalid because of any difficulty that may arise in applying its provisions.
 
 (Hygrade Provision Co.
 
 v.
 
 Sherman,
 
 (1925) 266 U. S. 497 [45 Sup. Ct. 141, 69 L. Ed. 402].)
 

 As stated in
 
 Pacific Coast Dairy
 
 v.
 
 Police Court,
 
 (1932) 214 Cal. 668 [8 Pac. (2d) 140, 80 A. L. E. 1217], “ ‘A statute cannot be held void for uncertainty if any reasonable and practical construction can be given to its language. Mere difficulty in ascertaining its meaning, or the fact that it is susceptible of different interpretations will not render it nugatory. Doubts as to its construction will not justify us in disregarding it.’ . . . But in determining whether a penal statute is sufficiently explicit to inform those who are subject to it what is required of them the courts must endeavor, if possible, to view the statute from the standpoint of the reasonable man who might be subject to its terms. Thus, when a statute employs words or phrases having a well-settled common law
 
 (sic)
 
 meaning of which a reasonable man in the ordinary conduct of his affairs is fully aware it is not for the court to determine that the statute is ambiguous or indefinite because through a strained construction of these words and phrases some ambiguity might arise.”
 

 In the absence of any further definition, the prohibition of the statute against selling below cost might well be interpreted as meaning below the cost of acquiring as distinguished from the combined cost of acquiring and selling. The legislative intent is rather fully expressed, however, that the “cost” of each article shall include not only the initial cost, but also its share of the load of carrying on the business through which it is sold. True, the legislature has not said “its share”, but these words are necessarily under
 
 *Supp. 766
 
 stood from the language used, and would be so understood by anybody in business. Any other interpretation would be to convict the legislature of the folly of defining the cost of the can of Crisco, involved in this case, as including all the costs of running appellant’s business, which costs likewise would be added into the cost of. every other article he sold. Even in the face of the legislature’s injunction to construe this statute “literally", we must not accept an interpretation so ludicrous and unnatural. (23 Cal. Jur. 766.)
 

 In support of the validity of the statute we must presume that the legislature was not without justification in concluding that it was using terms with a reasonably definite meaning to those affected, when it fixed the cost of an article, including its share of the business overhead, as the minimum price at which it could legally be sold. There is nothing in the record to indicate that the ordinary business man does not know when he has the facts at hand, whether he is selling an article, or service, below cost, or at a profit. We certainly do not take judicial notice that business is carried on with the terms here involved conveying uncertain concepts. The legislature evinced its understanding that ‘
 
 ‘
 
 costs ’ ’ had an accepted meaning by its statement in section 5 of the statute before us that, “Where a particular trade or industry, of which the person, firm or corporation complained against is a member, has an established cost survey for the locality and vicinity in which the offense is committed, the said cost survey shall be deemed competent evidence to be used in proving the costs of the person, firm or corporation complained against within the provisions of the act." Wo further note an article on “cost accounting" in Encyclopaedia Brittanica (vol. 6, 14th ed.) from which it appears that while there may be several routes to the answer, the answer to the question “What is the retail cost of an article?" ■is one recognized by the business world when attained.
 

 Further support for our conclusion that the provisions in question are not so uncertain that their enforcement will constitute taking property and liberty without due process, is found in the fact that there is woven into the offense, as an essential element of it, an intent to injure competitors and destroy competition. As pointed out in
 
 Hygrade Provision Co.
 
 v.
 
 Sherman, supra,
 
 and
 
 Hillsboro,
 
 
 *Supp. 767
 

 Coal Co.
 
 v.
 
 Knotts, supra,
 
 the requirement of an intent tends to lessen the disadvantages that arise from creating an offense whose boundaries are not too plainly limned. We are of the opinion that the statute does not offend against the due process requirements of the Constitution.
 

 Because of appellant’s plea of guilty, we have no problem here, as we doubtless shall have in later cases, of the sufficiency of the evidence to support the conviction. Nor do we find any further problem justifying discussion. We are of the opinion that the judgment should be affirmed; it is so ordered.
 

 Shaw, P. J., and Schauer, J., concurred.