[Crim. No. 231. Fourth Appellate District.—August 5, 1932.]

THE PEOPLE, Respondent, v. GEORGE MORRISON et al., Appellants.

J. Marion Wright for Appellants.

U. S. Webb, Attorney-General, and James S. Howie, Deputy Attorney-General, for Respondents.

BARNARD, P. J.—The defendants were jointly accused by indictment of the crime of conspiring to violate the Alien Land Law of this state. (Stats. 1921, p. lxxxiii; Stats. 1923, p. 1020; Stats. 1927, p. 881.) The indictment charged that the defendant Ozaki was and is an alien ineligible to citizenship under the laws of the United States; that he was a citizen and subject of the empire of Japan; and that he was not and is not authorized by law or by

any treaty between the United States and the empire of Japan or any other country to acquire, possess, enjoy, use, cultivate or occupy any real property or to have the beneficial use of, or any interest in, any real property in this state for agricultural purposes. It also charged that the defendants conspired to violate the provisions of the Alien Land Law in that they wilfully, unlawfully and feloniously combined, conspired and agreed by unlawful means and devices to bring about and accomplish the possession, enjoyment, use, cultivation and occupancy for agricultural purposes, by the defendant Ozaki, of certain land described, which is situated in the county of San Diego. It was further charged that this land was and is agricultural land and that, in furtherance of and to accomplish and effect the purpose and objects of said conspiracy, the defendant Morrison put the defendant Ozaki into possession of, and aided and encouraged him to take possession of, to use, enjoy, cultivate and occupy said land and that the defendant Ozaki entered into possession thereof, and used, enjoyed, cultivated and occupied the same, and raised and harvested crops thereon for his own use and benefit.

The case was tried before the court without a jury, on the following stipulated facts: "It is stipulated that the defendant George Morrison is, and was, at all times mentioned in the indictment, a native born citizen of the United States of America, and lessee of the land described in said amended indictment; that said land is agricultural land, and at all times mentioned in said amended indictment has been used exclusively for agricultural purposes; that on or about the 1st day of November, 1930, the said George Morrison did knowingly and willfully combine, confederate and agree with one H. K. Ozaki to bring about and accomplish the possession, enjoyment, use, cultivation and occupancy for agricultural purposes by said H. K. Ozaki, and thereafter to continuously keep and maintain the said H. K. Ozaki, in such possession, enjoyment, use, cultivation and occupancy, for agricultural purposes, and to the use and beneficial interest of the said H. K. Ozaki of all of the said land, and thereafter, and pursuant to said confederation, combination and agreement, and as a result thereof, and in furtherance of, and to accomplish and effect the purposes and objects thereof, the said George Morrison did put the

said H. K. Ozaki into possession of, and did permit, aid and encourage the said H. K. Ozaki to go into possession of, and to use, enjoy, cultivate and occupy the said land, and did use, enjoy, cultivate and occupy the same, and did raise and harvest crops thereon, for the use and benefit of said defendants, and each of them; that said H. K. Ozaki is a member of a race ineligible to citizenship in the United States of America, to-wit, of the Japanese race, but that there is no evidence nor proof nor agreement as to the place of birth of the said H. K. Ozaki nor as to whether or not the said H. K. Ozaki is a citizen of the United States of America.''

The defendants offered no evidence, and the court found each of the defendants guilty. Judgment was pronounced but sentence was suspended and each of the defendants was placed on probation. This appeal is from the judgment and from an order denying a motion for a new trial.

This case is practically identical with the case of *People* v. *Osaki*, 209 Cal. 169 [286 Pac. 1025, 1026], with the exception that the appellant maintains that the one point here raised was not passed upon or determined in that case. The only point raised is that section 9b of the Alien Land Law, as adopted in 1927, is discriminatory and in violation of the equal protection clause of section 1 of the fourteenth amendment to the Constitution of the United States, in that a defendant who is proved to be a member of a race ineligible to citizenship is put to the burden of proving his citizenship or his eligibility to citizenship, whereas a defendant who is not proved to be of such a race is not required to assume a like burden. Section 9b of this act, which is thus attacked, reads as follows:

''In any action or proceeding, civil or criminal, by the State of California, or the people thereof, under any of the provisions of this act, when the complaint, indictment or information, alleges the alienage and ineligibility to United States citizenship of any defendant, proof by the state, or the people thereof, of the acquisition, possession, enjoyment, use, cultivation, occupation or transferring of real property or any interest therein, or the having in whole or in part of the beneficial use thereof by such defendant, or of any such facts, and in addition proof that such defendant is a member of a race ineligible to citizenship under the

naturalization laws of the United States, shall create a *prima facie* presumption of the ineligibility to citizenship of such defendant, and the burden of proving citizenship or eligibility to citizenship as a defense to any such action or proceeding shall thereupon devolve upon such defendant.

"The Legislature hereby declares that its purpose in adopting this section is not to modify, limit or affect in any manner the provisions of section 9a of this act."

■ This section of the Alien Land Act establishes a rule of evidence. (*People* v. *Osaki, supra.*) While a presumption of ineligibility to citizenship arises, under the terms of the section, from proof of certain other facts, nothing in the act operates to preclude any defendant from the right of presenting his defense to the main fact thus to be presumed.

■ There is no vested right in particular rules of evidence and as a general rule, neither due process of law nor equal protection of the law is denied by a statute which makes one fact presumptive evidence of another fact. (*Virginia & West Virginia Coal Co.* v. *Charles,* 254 Fed. 379; *People* v. *Mallon,* 222 N. Y. 456 [4 A. L. R. 463, 119 N. E. 102]; *Fong Ting* v. *United States,* 149 U. S. 698 [37 L. Ed. 905, 13 Sup. Ct. Rep. 1016].) The rule is thus stated in 51 American Law Reports, at page 1141: "The general rule is well established that it is competent for the legislative body to provide by statute or ordinance that certain facts shall be *prima facie* or presumptive evidence of other facts, if there is a natural and rational evidentiary relation between the facts proved and those presumed; such statutes or ordinances are within the well settled powers of a legislative body to change the rules of evidence and do not infringe upon the rights of the judiciary or violate any other provisions of the Federal or State Constitution."

In *Gulf etc. Ry.* v. *Ellis,* 165 U. S. 150 [41 L. Ed. 666, 17 Sup. Ct. Rep. 255], it is said: "The mere fact of classification is not sufficient to relieve a statute from the reach of the equality clause of the Fourteenth Amendment, and that in all cases it must appear, not merely that a classification has been made, but also that it is based on some reasonable ground—some difference which bears a just and proper relation to the attempted classification, and is not a mere arbitrary selection."

In *Truax* v. *Corrigan*, 257 U. S. 312 [27 L. R. A. 375, 66 L. Ed. 254, 42 Sup. Ct. Rep. 124, 131],. the court said: "In adjusting legislation to the need of the people of a state, the legislature has a wide discretion and it may be fully conceded that perfect uniformity of treatment of all persons is neither practical nor desirable, that classification of persons is constantly necessary. . . . Classification is the most inveterate of our reasoning processes. We can scarcely think or speak without consciously or unconsciously exercising it. It must therefore obtain in and determine legislation; but it must regard real resemblances and real differences between things, and persons, and class them in accordance with their pertinence to the purpose in hand."

█ We are unable to see how it can be maintained that such a classification as the one resulting from the statute here attacked is not a natural and reasonable one. In *Terrace* v. *Thompson*, 263 U. S. 197 [68 L. Ed. 255, 44 Sup. Ct. Rep. 15], a case involving the Alien Land Act of the state of Washington, the court said: "The rights, privileges and duties of aliens differ widely from those of citizens; and those of alien declarants differ substantially from those of nondeclarants. . . . Two classes of aliens inevitably result from the naturalization laws—those who may and those who may not become citizens. The rule established by Congress on this subject, in and of itself, furnishes a reasonable basis for classification in a state law withholding from aliens the privilege of land ownership as defined in the act." In *Porterfield* v. *Webb*, 263 U. S. 225 [68 L. Ed. 278, 44 Sup. Ct. Rep. 21], where the Alien Land Act of this state was attacked as denying to ineligible aliens the equal protection of the law, the court said: "This case is similar to *Terrace et al.* v. *Thompson, supra.* In that case the grounds upon which the Washington Alien Land Law (Laws Wash. 1921, c. 50) was attacked included those on which the California act is assailed in this case. There the prohibited class was made up of aliens who had not in good faith declared intention to become citizens. The class necessarily includes all ineligible aliens, and in addition thereto all eligible aliens who have failed so to declare. In the case now before us the prohibited class includes ineligible aliens only. In the matter of classification, the states have wide discretion. Each has its own problems, depending on cir-

cumstances existing there. It is not always practical or desirable that legislation shall be the same in different states. We cannot say that the failure of the California Legislature to extend the prohibited class, so as to include eligible aliens who have failed to declare their intention to become citizens of the United States, was arbitrary or unreasonable.''

In *Cockrill* v. *People of the State of California,* 268 U. S. 258 [69 L. Ed. 944, 45 Sup. Ct. Rep. 490, 491], in discussing the presumptions created by section 9 of our Alien Land Act, the court said: ''The statute is not repugnant to the equal protection clause. The rule of evidence applies equally and without discrimination to all persons—to citizens and eligible aliens as well as to the ineligible. In the application of the law at the trial, no distinction was made between the citizen and the Japanese. Plaintiffs in error maintain that invalidity results from the fact that, where payment of the purchase price is made by an ineligible alien, the law creates a presumption of a purpose to prevent, evade, or avoid escheat, while no such presumption arises where such payment is made by a citizen or eligible alien. But there are reasonable grounds for the distinction. Conveyances to ineligible Japanese are void as to the state and the lands conveyed escheat. Payment by such aliens for agricultural lands taken in the names of persons not of that class reasonably may be given a significance as evidence of intent to avoid escheat not attributable to like acts of persons who have the privilege of owning such lands. The equal protection clause does not require absolute uniformity, or prohibit every distinction in the laws of the state between ineligible aliens and other persons within its jurisdiction. The state has a wide discretion and may classify persons on bases that are reasonable and germane having regard to the purpose of the legislation. (Citing cases.) The fact that in California all privileges in respect of the acquisition, use, and control of the land for agricultural purposes are withheld from ineligible Japanese constitutes a reasonable and valid basis for the rule of evidence.''

There seems to be no substantial difference between the *prima facie* presumption created by section 9b of this act and the presumption created by section 9 thereof, which was under consideration in the case last cited, and we are unable to see why most of the reasoning there employed as appli-

cable to said section 9, is not equally pertinent to the question now before us.

Not only is the classification of persons according to their eligibility or noneligibility to citizenship, which is ultimately involved in the operation of section 9b, a reasonable and natural one, having regard to real differences between two classes of persons whose rights and obligations are essentially unlike, but these differences have a real pertinence to the purpose of the statute.

Not only does the statute in question present to every defendant a fair opportunity to repel the presumption created thereby, but as a matter of fact the burden of meeting such a presumption is placed upon all defendants alike, whether they are citizens or not and whether or not they are eligible to citizenship. When a *prima facie* presumption arises, under the terms of the statute, from a sufficient allegation and evidence of certain facts, the burden of meeting the same is placed upon any defendant regardless of his citizenship or his eligibility to citizenship. The fact that some defendants may be able to meet and overcome the presumption created while other defendants may not is inherent in the nature of the case and has no relation to the question of equal protection of the law.

In our opinion this statute is not in conflict with the equal protection clause of section 1 of the fourteenth amendment to the federal Constitution.

The judgment and order appealed from are affirmed.

Marks, J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 17, 1932, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 1, 1932.