[S. F. No. 16665. In Bank. Nov. 1, 1944.]

THE PEOPLE, Respondent, v. PAY LESS DRUG STORE (a Copartnership) et al., Appellants.

Appelbaum & Mitchell, W. R. Griswold and Lewis N. Mitchell for Appellants.

Ralph E. Hoyt, District Attorney, J. F. Coakley, Chief Assistant District Attorney, R. Robert Hunter, Assistant District Attorney, and J. D. Cooper, Deputy District Attorney, for Respondent.

SHENK, J.—An injunction was sought by the plaintiff to restrain the defendants from violating certain provisions of the Unfair Practices Act (Stats. 1913, p. 508, as amended by Stats. 1937, p. 2395; Deering's Gen. Laws, 1937, p. 4157, Act 8781). The defendants appealed from the judgment which decreed the plaintiff's right to the writ of injunction.

The defendants conduct a cash and carry grocery business at 19th Street and Telegraph Avenue in Oakland. The complaint, filed in April, 1940, charged them with selling approximately 400 specified items below cost, and with offering for sale and selling other items as "loss leaders," with the intent of injuring competitors or destroying competition in violation of the act. The defendants admitted the sales below cost, but denied the charge of intent to injure competitors or destroy competition. They alleged that such sales were made in good faith to meet the "legal" prices of competitors. They also charged that certain sections of the act are unconstitutional.

There was evidence that merchants found by the trial court to be competitors of the defendants were injured by the admitted price cutting below cost. On the issue of their intent, the defendants introduced evidence to the effect that when they opened for business on a specified day they lowered the marked prices on a large number of items to meet the prices on similar items as advertised for that day by their competitors, and that whenever an item was marked

below cost it was for the purpose of meeting competitive prices and for no other reason. There was evidence, however, that after the competitors' prices were raised the defendants continued for periods of weeks or months to sell the items at the below cost prices and at prices lower than the prices of their competitors for similar articles or commodities, and that in many instances the sales below cost were not begun until weeks or months after the similar advertised price of a competitor had been discontinued. The trial court found on sufficient evidence that the defendants did not offer and sell the items below cost in an endeavor in good faith to meet the legal prices of competitors, but that they sold the items below cost for the purpose of destroying the business of competitors, and that the acts of the defendants were causing injury to those competitors and destroying competition. The court also found that the defendants had sold certain articles as "loss leaders."

Section 3 of the Unfair Practices Act makes it unlawful to sell any article or product at less than cost as defined, for the purpose of injuring competitiors or destroying competition, and subjects the violator to certain penalties. That section also prohibits the sale of "loss leaders," as defined. Section 5 provides that in all actions brought under the provisions of the statute the proof of one or more acts of selling below cost, together with proof of the injurious effect of such acts, "shall be presumptive evidence of the purpose or intent to injure competitors or destroy competition." Section 6 provides that the prohibitive provisions shall not apply (a) when the owner in good faith is closing out his stock or is discontinuing a certain article or product, or in sales of seasonal or perishable goods to prevent loss or depreciation, and appropriate notice is given to the public; (b) in the sale of damaged or deteriorated goods, and notice is given; (c) by an officer acting pursuant to judicial order; (d) in an endeavor made in good faith to meet the legal prices of a competitor selling similar articles in the same locality or trade area in the ordinary channels of trade.

Section 10 permits an action to enjoin acts in violation of the statute. Section 12 contains the usual severability clause relating to judicial pronouncements of unconstitutionality.

By section 13 the Legislature declares "that the purpose of this act is to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage com-

petition, by prohibiting unfair, dishonest, deceptive, destructive, fraudulent and discriminatory practices by which fair and honest competition is destroyed or prevented. This act shall be liberally construed that its beneficial purposes may be subserved.''

The constitutionality of the purpose and policy of the Legislature in enacting the Unfair Practices Act and of the means employed to subserve the legislative purpose by prohibiting sales below cost made with the intent to injure competitors or destroy competition was upheld generally as a valid exercise of the police power by the decisions of this court in *Wholesale Tobacco Dealers Bureau* v. *National Candy & Tobacco Co.,* 11 Cal.2d 634 [82 P.2d 3, 118 A.L.R. 486]; and *People* v. *Black's Food Store,* 16 Cal.2d 59 [105 P.2d 361]. (See, also, *People* v. *Kahn,* 19 Cal.App.2d Supp. 758 [60 P.2d 596]; *Dunnell* v. *Shelley,* 38 Cal.App.2d 118 [100 P.2d 830]; *Green* v. *Grimes-Stassforth S. Co.,* 39 Cal.App.2d 52 [102 P.2d 452].)

In the present case the defendant attacks specific provisions of the act. ▮ It is contended that the provision of section 5 that proof of sales below cost with ''injurious effect'' shall be ''presumptive evidence'' of the prohibited intent is vague and unconstitutional. It is argued that since the statute was enacted for the protection of the public against monopolies, doubt arises as to whether injury to competitors or to the public was intended by the words ''injurious effect.'' The language of that provision, together with the prohibitive language of section 3 and the declaratory language of section 13, makes it sufficiently clear that the Legislature deemed that injury to a competitor or destruction of competition was an ''injurious effect,'' and therefore within the ban of the act; and that it was not necessary to await success in the monopolistic effort before the measures provided to safeguard the public interest and welfare could be invoked. These provisions are sufficiently explicit to inform the merchant as to what is prohibited. He is not relegated to conjecture to determine his lawful conduct. There is no uncertainty in the provisions now complained of which could be said to hamper the defendants' intelligent choice of the course which may lawfully be pursued. ▮ Furthermore, an injurious effect is not an essential element of the violation. The violation is complete when sales below cost are made with the requisite intent and not within any of the

exceptions. █ Proof of injurious effect is permitted to be shown with the proof of sales below cost as presumptive or prima facie evidence that the requisite intent existed. The obvious and only effect of this provision is to require the defendants to go forward with such proof as would bring them within one of the exceptions or which would negative the prima facie showing of wrongful intent. They may present facts showing that they were within the express exceptions regardless of actual intent; or they may introduce evidence of another necessity not expressly included to show that sales were made in good faith and not for the purpose of injuring competitors or destroying competition.

It is unnecessary here to consider the defendants' suggestions' of circumstances other than the expressly designated exceptions, which would justify sales below cost and negative the prima facie showing of unlawful intent. The defendants introduced evidence solely in an attempt to bring themselves within exception (d), which permitted them to make sales below cost in an endeavor in good faith to meet the legal prices of their competitors.

█ A statutory requirement that the defendant go forward with evidence to rebut a prima facie showing of guilty intent from proof of specified facts is permissible when the result has some rational relation to those facts and the defendant is given a fair opportunity to meet it by evidence. (*Morrison* v. *California*, 291 U.S. 82, 88 [54 S.Ct. 281, 78 L.Ed. 664].) That case designates as the test of permissibility that "the state shall have proved enough to make it just for the defendant to be required to repel what has been proved with excuse or explanation, or at least that upon a balancing of convenience or of the opportunities for knowledge the shifting of the burden will be found to be an aid to the accuser without subjecting the accused to hardship or oppression." Our statute does not withdraw from the accuser the burden of proving a violation, nor does it deprive the defendant of the benefit of the presumption of innocence. Here there was a manifest disparity in convenience of proof and opportunity for knowledge as between the plaintiff and the defendants. The defendants were in the better position to know the intent and purpose of their conduct, which it might be difficult for the plaintiff to prove. The Legislature merely enacted into law what is common in human experience, that when a person causes injury by his acts he should be deemed to intend such

consequences unless he can excuse or explain his conduct by facts showing that he had an innocent intent. It was so enacted to avoid the possible conclusion that the accuser, from whom the defendants' purpose is generally concealed, must produce affirmative evidence of guilty intent in every situation in order to make out a prima facie case of violation of the act. After proof of the sales below cost and injury resulting therefrom, there is no undue hardship cast upon the defendants to require them to come forward with evidence of their true intent as against the prima facie showing, or with evidence which will bring them within a specified exception in the act. The power to enact such a provision in appropriate cases has been upheld in this state. (*People* v. *Osaki,* 209 Cal. 169 [286 P. 1025]; *People* v. *Associated Oil* Co., 211 Cal. 93, 109 [294 P. 717]; *People* v. *Scott,* 24 Cal.2d 774, 779 [151 P.2d 517]; *People* v. *Morrison,* 125 Cal.App. 282 [13 P.2d 800], appeal dismissed, 288 U.S. 591 [53 S.Ct. 401, 77 L.Ed. 970].) In *People* v. *Osaki, supra,* this court reviewed the question fully and recognized, in accord with the decisions of the United States Supreme Court, that to place upon the defendant the duty of introducing facts peculiarly within his knowledge, and hidden from discovery by others, was not inconsistent with the presumption of innocence and was consistent with all the constitutional protections including the right of an accused not to be a witness against himself.

The case of *Great Atlantic & Pacific Tea Co.* v. *Ervin,* 23 F.Supp. 70, relied on by the defendants, does not avail them. That case involved a section in a Minnesota statute providing that sales by a retailer at less than 10 per cent above manufacturers' published list prices less published discounts should be prima facie evidence of a violation of the act. It was held that such sales could not be presumptive evidence of guilty intent because guilty intent did not rationally follow merely from the fact of sales under 10 per cent above list, and that the proof required of the defendant placed upon him a hardship which was regarded as outweighing the advantage to the state. That case did not involve a provision comparable to that contained in our statute. There the prima facie showing resulted where sales were made below an arbitrary percentage above list, regardless of actual cost or injurious effect. The conclusion in that case would probably have been otherwise if the Minnesota statute had been similar

to the California act. That assumption is justified in view of the fact that the Minnesota statute was subsequently amended to cure the manifest defects and as amended was upheld in *McElhone* v. *Geror,* 207 Minn. 580 [292 N.W. 414].

■ The defendants contend that the language of subdivision (d) of section 6 is also so indefinite and uncertain as not to permit a person to understand its meaning and that the subdivision is for that reason invalid. They say that no one can tell what territory is embraced in ''the same locality or trade area.'' They rely on *State* v. *Standard Oil Co.,* 195 S.C. 267 [10 S.E.2d 778, 785]. That case is not in point. ·There a statutory provision prohibited the sale of a ''commodity at a lower rate to one purchaser in the same city . . . than is charged for said commodity . . . in another section of said city, . . .'' The court pointed out that discrimination in the same section of the city was not prohibited, and since ''section'' was not defined it would be impossible to know when the provision was being violated. There is no such difficulty here. In the present case the trial court found the trade area; found that the defendants knew what was their ''locality or trade area'' within the meaning of the act, and that the complaining competitors were within that locality or trade area. The court thus found that the defendants knew who were their competitors. It is safe to assume that merchants generally know who are their competitors, and from what locality or trade area they draw their customers. The language complained of is shown in this case to be susceptible of practical application without more particular definition. Empirical surmises are not to be substituted for pragmatical results. Until a case is presented which demonstrates the practical unworkability of the language we would not be inclined to accord much weight to arguments based on theory which is contrary to the facts and the court's findings. Furthermore, if in some cases the ''locality or trade area'' may be difficult of ascertainment, that fact alone would not render the provision invalid. (*McElhone* v. *Geror, supra,* 292 N.W. at p. 419.) Nor is this case like *Connally* v. *General Construction Co.,* 269 U.S. 385, where it was held that the word ''locality'' was open to uncertain application. Here we have the word ''locality'' followed by the words ''or trade area,'' and from the factual background presented we cannot say that the phrase ''locality or trade area'' has a connotation difficult of ascertain-

ment by the court or parties. Such a situation distinguishes this from the Connally case.

■ The defendants contend that they should not be compelled to ascertain the "legal prices" of their competitors before invoking the exception provided by subdivision (d) of section 6 for the reason that it is impossible to ascertain the legal prices of competitors' goods without an audit of their books. The defendants have assumed an absolute prerequisite. The requirement is not absolute. It is merely that the defendants shall have endeavored "in good faith" to meet the legal prices of a competitor. A similar provision was upheld in *State* v. *Sears*, 4 Wn.2d 200 [103 P.2d 337, 345], the court saying "that if a merchant in good faith reduces his prices to meet those of a competitor, who he in good faith believes has a legal price, he will not be violating either the intent or the wording of the act." The provision therefore is not like that involved in *Commonwealth* v. *Zasloff*, 338 Pa. 457 [13 A.2d 67, 128 A.L.R. 1120] (see, also, *State* v. *Packard-Bamberger & Co.*, 123 N.J.L. 180 [8 A.2d 291]), holding invalid a provision which exempted the merchant if the price was made "to meet the legal price of a competitor" as an absolute requirement without according him the opportunity of showing his good faith. ■ Here the trial court was justified in concluding that the defendants' long continued course of selling below cost after the lowered prices were abandoned by their competitors, negatived any possible inference of good faith to be accorded them by their initial lowering of prices below cost.

■ The defendants contend that the provision defining "loss leader" is indefinite in that it appears not to require the intent to injure competitors or destroy competition in all cases. Inasmuch as the judgment enjoined sales of articles as "loss leaders" only when they diverted trade from or otherwise injured competitors, the defendants are not in a position to complain.

The defendants assert that the requirement that they ascertain their own cost of doing business is grossly impracticable. But here again it must be said that the record does not support the assertion. The trial court found that the defendants' cost of doing business was 8.03 per cent, and that the ascertainment of its cost of doing business was not impossible. In any event, the defendants conceded that sales of commodi-

ties in some cases were made even below invoice cost. Here, as in *Wholesale Tobacco Dealers Bureau* v. *National Candy & Tobacco Co.*, *supra* (at p. 662), where the same contention was made, the factual background for ascertaining whether the provisions for discovery of cost are too uncertain to be susceptible of reasonable application has not been presented, and in the absence of such presentation the issue should not be determined. Also, as pointed out in *State* v. *Sears, supra*, 103 P.2d at page 343, with reliance on *People* v. *Kahn, supra,* any difficulty in computing cost is a factual one, and statutes are not to be declared invalid because in their application factual difficulties may arise.

Section 10 of the act provides immunity of a defendant or witness brought into court to testify in any action under the statute. The immunity expressly extends to prosecutions for violation of the provisions of the act. The defendants contend that the immunity provided is not commensurate with that granted by the state and federal Constitutions. It is not necessary to determine that question inasmuch as the defendants are not now in a position to claim an immunity privilege.

 The defendants contend that the trial court erroneously refused to strike out the hearsay testimony of one witness, given on cross-examination by the defendants, that "Pay Less" was the first to cut the price on one item, and that the failure to strike the testimony was prejudicial. The ruling, if error, did no harm inasmuch as the trial court had before it the defendants' records and exhibits of advertisements of competitors from which it ascertained the facts and which support its findings.

 Finally the defendants contend that the judgment is void for uncertainty. The defendants were enjoined "from offering for sale or selling, contrary to the provisions of section 3 of the Unfair Practices Act, any article or product at less than the cost thereof to the vendor, as cost . . . is defined in the Unfair Practices Act, for the purpose of injuring competitors or destroying competition, and further from using any article or product as a 'loss leader' as 'loss leader' is defined in said Unfair Practices Act, and which diverts trade from or otherwise injures competitors; provided, however," that the restraint should not apply to sales "made under and pursuant to the provisions of paragraphs (a), (b), (c), (d), or any of them, of section 6" of the act.

Section 10 of the act, as amended in 1939 (Stats. 1939 p. 1424; Deering's Gen. Laws, 1939 Supp., Act 8781), authorizes an action to enjoin any violation of the provisions of the act, and, in addition, for the recovery of damages. The section, as so amended, further provides that if the court in any such action shall find that the defendant is violating any provision of the act, it shall enjoin him from doing all acts prohibited by the section or sections found to have been violated, and may include any other restraint deemed expedient to insure against the defendant's committing a future violation of any such section or sections, and the injunction shall cover every article or product and not merely the particular article or product involved in the action.

Prior to the 1939 amendment, section 10, added by Statutes of 1935, page 1549, provided merely that an action might be maintained to enjoin a continuance of any act or acts in violation of any of the provisions of sections 1 to 7.

Had the language of 1935 remained unchanged defendants' argument might be persuasive to the effect that the injunction couched in the language of the prohibitive provisions involved was too broad and therefore violative of the principles announced in *New York, N. H. & H. R. Co.* v. *Interstate Commerce Com.,* 200 U.S. 361 [26 S.Ct. 272, 50 L.Ed. 515]; *Rust* v. *Griggs,* 172 Tenn. 565 [113 S.W.2d 733, 738]; and *Johnson* v. *Farmer,* 41 Cal.App.2d 874, 881 [107 P.2d 959, 108 P.2d 945]. However, the defendants do not maintain that upon the commission of unlawful acts the courts may not provide for restraint of all such and related acts. (See *National Labor Relations Board* v. *Express Publishing Co.,* 312 U.S. 426, 435-436 [61 S.Ct. 693, 85 L.Ed. 930].) The language of the judgment is not couched in terms restraining violation of the act generally. It contemplates restraint of those acts only which are prohibited by the particular sections found by the court to have been violated by the defendants. In view of the scope fo the injunction required by section 10 as amended, the court was constrained to follow the legislative mandate and did so properly in the language employed. The restraint applies only to acts in violation of the sections here involved.

Other contentions do not require discussion.

The judgment is affirmed.

Gibson, C. J., Curtis, J., Traynor, J., and Schauer, J., concurred.

EDMONDS, J.—Regardless of the question of constitutionality which is presented by the presumption of guilty intent declared by section 5 of the Unfair Practices Act (Stats. 1913, p. 508, as amended by Stats. 1937, p. 2395, Deering's Gen. Laws, 1937, p. 4157, Act 8781), I am of the opinion that the judgment should be reversed upon the ground that it is not supported by any substantial evidence. For although the record includes the testimony of merchants that the practices of Pay Less caused injury to them, the conclusions of these witnesses have no evidentiary basis whatever. Certainly responsibility for what the Legislature has defined as an unfair trade practice should rest upon something more than the *ipse dixit* of a complaining merchant where the record shows that he is surrounded by other business establishments which sold the same goods at the same prices as the one charged with the statutory dereliction.

The Unfair Practices Act requires a merchant, at his peril, to make a number of determinations upon which, as shown in the present case, reasonable minds may differ because the act provides no definite and certain standards. He encounters risk in determining whether he is in good faith endeavoring to meet competition (§ 6, subd. d), who are his competitors (§§ 3, 5 and 6, subd. d), and whether he is injuring alleged competitors (§§ 3, 5). For these reasons, the courts should require a clear and unmistakable showing of price cutting contrary to the statute, coupled with evidence of injury to a competitor before imposing the sanctions specified by the Legislature. Such a requirement is particularly essential because liability may be, and in the present case was, based wholly upon the presumption of guilty intent.

Violation of the act may be shown by sales under cost, for the purpose of injuring competitors or destroying competition (§ 3). The appellants concede they made some sales below cost but the complainant must also prove that this was done with the purpose of injuring competitors. The only direct evidence upon that issue was the testimony of the officers and employees of Pay Less. Prices were lowered, they declared, for the sole purpose of meeting competition and with no intention to injure competitors. The trial judge based his finding to the contrary upon proof which, according to the act, constitutes "presumptive evidence of the purpose or intent to injure competitors or destroy competition" (§ 5). The pre-

sumption rests upon evidence of (a) one or more acts of selling below cost, and (b) the injurious effect of such acts.

But there is no substantial evidence that, in selling below cost, the appellants caused injury to any one of its competitors. The Pay Less store commenced business in downtown Oakland, in direct competition with a number of chain stores and other established grocers, approximately six months prior to the basic period named in the complaint as constituting the period of sale violations. It was a highly competitive location and, soon after Pay Less commenced operations, its neighbors proceeded to lower prices on certain staples, principally coffee. Pay Less had to hold its customers. But on no occasion did Pay Less lower its prices prior to the appearance of advertising by one or more of its downtown competitors or, in a few instances, when Pay Less checkers found that its competitors had lowered prices.

These nearby stores constituted the competitors of Pay Less but none was called to testify by the prosecution, nor does it appear that they made any complaint concerning the trade practices of Pay Less. The persons called as witnesses by the People operated stores in outlying districts and, with two exceptions, were members or officers in a rival grocery association which has been recently convicted of violations of the Sherman Antitrust Act for price fixing. But there is no standard stated in the Unfair Practices Act by which a merchant may determine who his competitiors are for the purpose of compliance with the legislation. Certainly a finding that one person is a competitor of another should rest upon more than the mere opinion of a witness. Yet in the present case, although Pay Less was doing business in a downtown location of a large city, the court found that certain merchants having small stores miles away were competitors of Pay Less and injured by its trade practices.

In contradiction of the declaration of these merchants that Pay Less was its competitor stands evidence which directly disproves such a conclusion unless the act makes every merchant a competitor of every other merchant in the same line of business within an area nowhere defined. But modern business is built upon the principle that there is no certain and limited demand for goods; on the contrary it recognizes that individual enterprise may greatly enlarge consumer demand and bring general benefit to a particular industry. Certainly the

Unfair Practices Act must be interpreted as requiring a clear and unmistakable showing of injury to a competitor; under any other construction, the presumption of guilty intent stated in section 5 of the act would be unconstitutional (*Morrison* v. *California*, 291 U.S. 82 [54 S.Ct. 281, 78 L.Ed. 664] ; *Tot* v. *United States*, 319 U.S. 463 [63 S.Ct. 1241, 87 L.Ed. 1519]), for a presumed intent to injure competitors would have no reasonable relation to sales below cost by merchants not in competition. Furthermore, if the statute may be enforced against one not in competition with the complainant, the legislation is invalid. Fundamental is the proposition that a criminal statute must define an offense with a certainty that affords fair and reasonable notice of the conduct prohibited. (7 Cal.Jur. 843; 22 C.J.S. 70-74; 14 Am.Jur. 773, 774.) As presently interpreted, in my opinion the act is void for uncertainty.

There is no evidence whatever that any customer of the complaining merchants ever made a purchase at the Pay Less store. The evidence that Pay Less sold coffee below cost includes the explanation that this was done for the purpose of meeting the competition of others who had broken the price. Upon this evidence and the testimony of five persons having small stores far away from Pay Less, the court found the presumed intent to injure those competitors. And this finding was made notwithstanding the admission of each of the complaining merchants that his establishment was situated within a short distance from one or more chain stores charging prices corresponding to those of Pay Less upon the items involved.

The testimony of Henry J. Jacobs, secretary of the Retail Grocers Association, is not relevant to the issue because he was not in business during the basic period specified in the complaint. The store owned by the witness Julias Martioli, a past president of the Retail Grocers Association, was located over a mile and one-half from Pay Less, but a Safeway store, which sold coffee at prices corresponding to those of Pay Less, was within one block of the Martioli store and another chain store was near by. Harvey Jessiman was in business approximately four miles distant from Pay Less. Alvin Smith, treasurer of the Retail Grocers Association, who had been located in Piedmont for about thirteen months prior to the trial, was over a mile from the Pay Less store. He admitted that two large chain stores were situated near his grocery. James Zahas, procured by the Retail Grocers Association as

a witness, and who "imagined" he was in competition with Pay Less, was located over a mile from that store, but near a Safeway and within six blocks from a shopping center containing a number of chain stores. William J. Souza, an active member of the Retail Grocers Association, had a store located three miles from Pay Less, but a block from a Safeway and a Lucky store.

This testimony, in my opinion, does not amount to substantial evidence that any one of the witnesses was a competitor of Pay Less, or show any causal connection between the appellants' price reductions and the loss of gross volume which the five grocers testified they sustained during the basic period. Accordingly, any testimony concerning gross business volume during the basic period (January through March) as compared to the preceding three months, which include the holiday period, would not be relevant to the issue concerning whether Pay Less had injured competitors. In this connection, moreover, it may be observed that although testimony of a loss of business volume allows an inference of a corresponding loss of profits, not one of the complaining grocers testified that his net profits were unusually decreased after the first of the year, as compared to the preceding holiday period. If these five merchants sustained a loss of volume during the basic period, numerous responsible causes might be found but, according to well settled principles of proximate cause, the Pay Less policy of meeting competition would appear to be remote, uncertain and speculative as a cause of the effect claimed.

In order to raise the presumption of criminal intent, the prosecution had the burden of proving that Pay Less proximately caused a loss of profits to its competitors. But in this case there is no evidence whatever upon that issue, for no merchant testified that customers were drawn away from him with a resulting loss of profits as the direct and proximate consequence of the appellants' trade practices.

For these reasons, in my opinion, the judgment should be reversed.

CARTER, J.—I dissent. The statute involved in this case provides that proof of sales below cost, plus proof of injury to a competitor, is *presumptive evidence* of intent to injure competitors or destroy competition. In order to have a violation of the act there must be an intent to injure. There is no

rational or probable conclusion that may be drawn from general experience that the concurrence of selling below cost and injury to competitors points to an intent to injure competitors. The majority opinion proceeds upon the theory that the *vital test* of the validity of a presumption is whether it is too much of a burden to require the defendant to rebut that presumption in the light of the asserted balance of convenience in favor of requiring the defendant rather than the prosecution to go forward with the proof. For illustration it is said, after citing *Morrison* v. *California,* 291 U.S. 82 [54 S.Ct. 281, 78 L.Ed. 664], ''That case designates *as the test* of permissibility that 'the state shall have proved enough to make it just for the defendant to be required to repel what has been proved with excuse or explanation, or at least that upon a balancing of convenience or of the opportunities for knowledge the shifting of the burden will be found to be an aid to the accuser without subjecting the accused to hardship or oppression.' '' (Italics added.) Whatever may have been the test set forth in the Morrison case it can no longer be said to be the law. *The issue of convenience is not the test.* The primary question, which involves the issue of due process of law, is whether there is a rational connection between the fact proved and the presumption. In the latest discussion of the subject by the Supreme Court of the United States, that is made clear. It is said in *Tot* v. *United States,* 319 U.S. 463, 467 [63 S.Ct. 1241, 87 L.Ed. 1519] :

''The Government seems to argue that there are *two alternative tests of the validity of a presumption created by statute.* The first is that there be a rational connection between the facts proved and the fact presumed; the second that of comparative convenience of producing evidence of the ultimate fact. We are of the opinion that *these are not independent tests* but that *the first is controlling and the second but a corollary.* Under our decisions, a statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed, if the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience. This is not to say that a valid presumption may not be created upon a view of relation broader than that a jury might take in a specific case. But where the inference is so strained as not to have a reasonable relation to the circumstances of life

as we know them it is not competent for the legislature to create it as a rule governing the procedure of courts. . . .

"*Nor can the fact that the defendant has the better means of information, standing alone, justify the creation of such a presumption.* In every criminal case the defendant has at least an equal familiarity with the facts and in most a greater familiarity with them than the prosecution. It might, therefore, be argued that to place upon all defendants in criminal cases the burden of going forward with the evidence would be proper. But the argument proves too much. If it were sound, the legislature might validly command that the finding of an indictment, or mere proof of the identity of the accused, should create a presumption of the existence of all the facts essential to guilt. This is not permissible.

"Whether the statute in question be treated as expressing the normal balance of probability, or as laying down a rule of comparative convenience in the production of evidence, it leaves the jury free to act on the presumption alone once the specified facts are proved unless the defendant comes forward with opposing evidence. And this we think enought to vitiate the statutory provision.

"Doubtless the defendants in these cases knew better than anyone else whether they acquired the firearms or ammunition in interstate commerce. It would, therefore, be a convenience to the Government to rely upon the presumption and cast on the defendants the burden of coming forward with evidence to rebut it. But, as we have shown, it is not permissible thus to shift the burden by arbitrarily making one fact, which has no relevance to guilt of the offense, the occasion of casting on the defendant the obligation of exculpation. *The argument from convenience is admissible only where the inference is a permissible one,* where the defendant has more convenient access to the proof, and where requiring him to go forward with proof will not subject him to unfairness or hardship." (Italics added.)

The presumption in the instant case has no rational connection between it and the fact proved. It has been held that a statute which raises a presumption of intent to defraud from the circumstance that a laborer accepts property pursuant to a contract of employment and then fails to perform the services is invalid. (*Bailey* v. *Alabama,* 219 U.S. 219 [31 S.Ct. 145, 55 L.Ed. 191].) *McFarland* v. *American Sugar Ref. Co.,* 241 U.S. 79 [36 S.Ct. 498, 60 L.Ed. 899], involved

a statute making it a crime for engaging in a monopoly in the sugar refining business. It was presumed that a monopoly existed if the person systematically paid a lesser price for sugar in Louisiana than he did in other states. The statute in *Manley* v. *Georgia*, 279 U.S. 1 [49 S.Ct. 215, 73 L.Ed. 575], denounced as a crime the fraudulent insolvency of a bank and declared the presumption that a bank which became insolvent was deemed to have become so fraudulently. It was held invalid. *Western & Atlantic R. Co.* v. *Henderson*, 279 U.S. 639 [49 S.Ct. 445, 73 L.Ed. 884], dealt with a state statute which declared a presumption of negligence on the part of a railroad company when a collision occurred at a highway crossing between a train and a vehicle. *Morrison* v. *California*, 291 U.S. 82 [54 S.Ct. 281, 78 L.Ed. 664], involved the prohibition of the occupation of lands by aliens, and that the state need only prove that the defendant possessed the land and allege in the indictment or information that he was an alien or ineligible for naturalization. The defendant must prove his citizenship. The court said at page 90:

*"Possession of agricultural land by one not shown to be ineligible for citizenship is an act that carries with it not even a hint of criminality.* To prove such possession without more is to take hardly a step forward in support of an indictment. No such probability of wrong-doing grows out of the naked fact of use or occupation as to awaken a belief that the user or occupier is guilty if he fails to come forward with excuse or explanation. . . . Even so, the occasions that justify regulations of the one order have a kinship, if nothing more, to those that justify the others. For a transfer of the burden, experience must teach that the evidence held to be inculpatory has at least a sinister significance. . . .

"We turn to this statute and endeavor to assign it to its class. In the law of California there is no general prohibition of the use of agricultural lands by aliens, with special or limited provisos or exceptions. To the contrary, it is the privilege that is general, and only the prohibition that is limited and special. Without preliminary proof of race, occupation of the land is not even a suspicious circumstance." (Italics added.) Paraphrasing the quotation from the Morrison case, "selling below cost followed by injury to a competitor 'is an act that carries with it not even a hint at criminality,'" no probability of wrongdoing arises.

When the constitutionality of the statute in question was considered by this court the requirement of intent to injure competitors was believed to be necessary to its validity. In *Wholesale Tobacco Dealers Bureau* v. *National Candy & Tobacco Co.*, 11 Cal.2d 634, 658 [82 P.2d 3, 118 A.L.R. 486], the court stated:

"It is next urged by appellant that every sale below cost, except as provided in section 6, is made unlawful by section 3 regardless of intent, and that so construed the act is unconstitutional. It would certainly add to the weight of appellant's argument on the main issue if the statute omitted intent as an integral part of the act prohibited. *It is one thing, from a legal standpoint, to prohibit sales below cost engaged in for the purpose of injuring competitors and destroying competition, and quite another to merely prohibit all such sales regardless of intent. It may well be that an absolute prohibition regardless of intent would be unreasonable.* (See *Fairmont Creamery Co.* v. *Minnesota*, 274 U.S. 1 [47 S.Ct. 506, 71 L.Ed. 893, 52 A.L.R. 163].)" (Italics added.) Other cases have held that the lack of the requirement of a wrongful intent renders such statutes invalid. (*State* v. *Packard-Bamberger & Co.*, 123 N.J.L. 180 [8 A.2d 291]; *Commonwealth* v. *Zasloff*, 338 Pa. 457 [13 A.2d 67, 128 A.L.R. 1120].)

An analogous presumption under unfair competition statutes has been held invalid. (*Great Atlantic & Pacific Tea Co.* v. *Ervin*, 23 F.Supp. 70.)

If the presumption is not available there is no evidence of any intent to injure competitors or destroy competition. There are present only two things: (1) sale below cost, and (2) that defendant sold below cost for some time after the appearance of the last advertisement of his competitors of items below cost. These acts do not give rise to an inference that defendant intended to injure its competitors or destroy competition. On the contrary, the continuance of sales below cost after the last advertisement showed that it was ignoring competition and its competitors. It was endeavoring to build up its own business, a wholly legitimate purpose. Common experience and propensities of man indicate that when a merchant sells below cost he has no thought or intent to injure his competitors. He is merely attempting to develop or preserve his own business, with the thought that his rivals will also prosper. To determine otherwise is to destroy completely the presumption of innocence. It is said in *Commonwealth* v.

*Zasloff*, 338 Pa. 457 [13 A.2d 67, 70, 128 A.L.R. 1120] : "Price cutting in itself is not an evil; on the contrary, the more intense the competition the greater the likely advantage to the purchasing public. Indeed, there is no reason why a merchant should not make an absolute gift of merchandise to his customers if he desires to be benevolent or thereby to advertise his business. *There are many other conceivable and wholly proper reasons which might induce him to make sales without profit*, as for example, a necessity of paying importunate creditors. It is only when the object of price cutting is *sinister,—to destroy a competitor by suffering a temporary loss in order to gain an ultimate monopoly* (*Mogul Steamship Co., Ltd.* v. *McGregor, Gow & Co.*, 23 Q.B.,L.R. 598), or to defraud the public by seducing them into the purchase of other goods at an exorbitant price—that the selling of goods at less than cost may constitute an economic or social evil. The Pennsylvania act, therefore, is arbitrary, and the means it employs are grossly out of proportion to the object which it seeks to attain.

"There are certain businesses which at one time or another have been regarded by the community as so inherently and generally vicious that the courts have recognized the power of the legislature to suppress them altogether; for example, the manufacture and sale of intoxicating liquors . . . the manufacture of oleomargarine . . . the sale of futures in grain or of stocks on margin . . . and several other types of business referred to in *Nebbia* v. *New York*, 291 U.S. 502, 528. . . . *But the selling of merchandise below cost is, in general, an innocent and legitimate practice*, and subject to abuse only in occasional instances. Under such circumstances it has been uniformly held to be beyond the power of the legislature to effect an absolute prohibition." (Italics added.)

It should be noted that in the instant case the statute requires a *specific intent,* as distinguished from a general criminal intent, that is, an intent to injure competitors or destroy competition. *Where a specific intent is required by the statute it may not be inferred merely from the commission of an unlawful act, and the rule that a person knowingly committing an unlawful act shall be presumed to have intended the consequences naturally flowing therefrom is not applicable.* It is said in 8 Cal.Jur. 26: "Except in cases of murder, in which a contrary rule is established by statute, wherever a specific intent is an element of an offense, the

existence of that intent must be established as a fact by such evidence as will warrant a conclusion to that effect by the jury. *It is not to be presumed from the commission of the unlawful act,* though the jury may infer it from the acts and conduct of the defendant. This is true wherever the crime falls short of homicide, even if it be the crime of assault with intent to commit murder.''

The record discloses that the trial court found: ''That the offering for sale, advertising by posters for sale, and selling below cost by [defendant] was done for the purpose of injuring competitors of [defendant] or for the purpose of destroying competition of other merchants.'' No evidence was offered which can be said to even remotely support such a finding, and the trial court must have based its conclusion upon the presumption provided for in paragraph 5 of the Unfair Practices Act to the effect that selling below cost is presumptive evidence of intent to injure competitors or destroy competition. In view of my conclusion that the presumption is not available as evidence to support such a finding, it cannot stand. I am therefore forced to the conclusion that in the absence of proof of intent there is no evidence to sustain the findings of the trial court on this issue, and the judgment should therefore be reversed.