[L. A. No. 12985. In Bank.—April 3, 1933.]

JAMES A. YOUNG, Respondent, v. ELMER ENFIELD et al., Appellants.

John M. Hall and Alexander T. Sokolow for Appellants.

J. R. Wilder, Arthur J. Gediman and William J. McNichols for Respondent.

SEAWELL, J.—Defendants Elmer Enfield and Southland Home Laundry Corporation appealed from the judgment entered in this action brought by plaintiff James A. Young to obtain an accounting of the business conducted by said corporation and a determination of his interest in the capital stock of said corporation and his right to participate in the management thereof. The terms and provisions of said judgment will be set forth in detail hereinafter.

The facts which gave rise to the action are as follows: Defendant Elmer Enfield desired to acquire an interest in a laundry business. Plaintiff wished to find a partner or to sell the laundry business operated by him in the city of Los Angeles under the name of Elysian Laundry. By his own admission, he was in debt and it was difficult for him to get along without additional capital. Defendant represented that he could provide the needed capital. It was orally agreed that a corporation should be formed to conduct the business. No written agreement was ever entered into. Defendant employed the Nevada Agency and Trust Company to form the corporation. It was organized under the laws of Nevada as the Southland Home Laundry Corporation on November 17, 1927, by three incorporators, who were persons connected with said agency company, and who became the first directors. At the first directors' meeting, held in Reno, Nevada, on November 17, 1927, a resolution was passed which ordered that stock be issued in accordance with the following table, and it was so issued:

|  | Preferred (Par–$25) | Class A Common (No par value) | Class B Common (No par value) |
|---|---|---|---|
| Elmer Enfield (defendant) | 200 | 200 | 1,200 |
| James A. Young (plaintiff) | 280 |  | 280 |
| F. W. Meckfessel | 120 |  | 120 |

At the conclusion of this meeting the original incorporators and directors resigned and elected defendant, plaintiff and one Lambert directors. This issue of stock left 400 shares of preferred stock and 400 shares of class B common stock undisposed of. Dividends at the rate of eight per cent per

annum, to be cumulative, were required to be paid on preferred stock before any dividends should be declared on common stock. Only holders of class B common stock had the right to vote. The 200 shares of class A common stock are not here involved. A plan was to be arranged for distribution of this stock to employees as a bonus, and defendant admittedly holds it in trust for such purpose.

Plaintiff Young transferred all assets of the Elysian Laundry to the Southland Home Laundry Corporation. He did not own the real property on which the laundry was operated. The 280 shares of preferred stock issued to him had a par value of $25 a share, or a total par value of $7,000, which is the value placed by him in his complaint on the assets transferred, after allowing for liabilities. F. W. Meckfessel, father-in-law of defendant Enfield, paid $3,000 in cash for the 120 shares of preferred stock, par value $25 per share, issued to him. It had originally been intended that Enfield should purchase and transfer to the corporation a laundry route known as the Pope Laundry, but on March 25, 1928, the corporation by resolution voted to accept the demand note of Enfield for $5,000 in lieu of said route, and this note was subsequently paid in full. The 200 shares of preferred stock issued to Enfield had a par value of $5,000. Plaintiff Young and Meckfessel each received the same number of shares of class B common stock as of preferred stock, to wit, 280 and 120 shares, respectively, but to Enfield, who received 200 shares of preferred stock, 1200 shares of class B common stock, the no par value voting stock, were issued. He subsequently sold 40 shares of class B stock to F. W. Meckfessel and 20 shares to W. R. Meckfessel, his brother-in-law, leaving him with 1140 shares, or 1138 after transfer of one share to plaintiff and one to another person, who became the third director of the corporation. Defendant Enfield claims that it was understood as a condition of his entering the business that he should have voting control, and that the 1200 shares of voting stock, upon which no dividends could be paid until eight per cent cumulative dividends had been paid on preferred stock, were issued to him by express agreement and in consideration of the fact that he promised to and did obtain additional capital for the business. By the judgment appealed from the court ordered redistribution of the

1138 shares held by defendant, so that plaintiff, who held 281 shares, should thereafter own 709 shares and defendant 710.

Defendant Enfield became president and treasurer of the corporation, and plaintiff Young, vice-president. Defendant borrowed over $20,000 on behalf of the corporation from his own relatives, which was invested in new and additional equipment. The total value of the plant at the time defendant became associated with the business in November, 1927, was approximately $11,000. On April 26, 1930, it was over $60,000. The total volume of laundry business for the first week defendant was interested in the business was $220; the week preceding the trial it was $3,600. Nevertheless, the disbursements for the period November 17, 1927, to May 6, 1930, exceeded the receipts by $227.72, no doubt due to the fact that such large sums had been invested in additional equipment. No dividends were ever paid, but plaintiff and defendant each drew a salary of $35 a week. On March 29, 1930, plaintiff claims, and the court found, that defendant without right excluded him from the laundry business and the management thereof. Defendant claims that he was driven to this course because plaintiff so often came to work intoxicated that he was unable to participate in the management of the laundry, and this was his sole reason for excluding him. On this point there was a conflict in the evidence, and we are bound by the trial court's finding that plaintiff was not given to intoxication.

On June 5, 1930, plaintiff filed his complaint herein, the theory of which is not entirely clear. Although he alleges a scheme on the part of defendant to cheat and defraud him of a prosperous business, and his wrongful exclusion from said business, he does not seek to rescind the transaction and recover the laundry as his individual property. Nor does he pray for a dissolution and liquidation, as in the case of a partnership, on the ground that he and defendant are no longer able jointly to manage the business in harmony. Rather, the relief prayed for is based on a continuance of the corporation. Plaintiff prays for an accounting and for restoration to office. The redistribution of class B common stock awarded by the judgment was not mentioned in the prayer for relief.

The court made lengthy findings, many of which follow word for word the language of the complaint, and thereby incorporate in the findings the confusion and uncertainty inherent in certain allegations of the complaint. Several of the findings, including the finding of an original fraudulent scheme to cheat and defraud plaintiff of his business, are not sustained by the evidence viewed in the light most favorable to plaintiff. Due no doubt to the state of plaintiff's pleading and the manner of presentation, the trial court expressed difficulty in disposing of the case, and plaintiff and respondent has not aided our consideration on appeal by filing a brief.

The entire testimony of plaintiff as to the terms of the agreement was that a corporation was to be formed, and that everything was to be divided equally. He claims to have had an entire lack of knowledge as to the details of corporate affairs and the issuance of stock, which matters he left to the exclusive discretion of defendant. He alleged in his complaint, and the court found, that it was agreed that "this plaintiff and said defendant would at all future times share and share alike and equally in said business", and that they would "share and share alike in all assets of the corporation, and in the proceeds from the business carried on by the same". The agreement is not described with any greater certainty or particularity in the pleadings or in the testimony of plaintiff. It is this finding of equality, made in the language of the complaint, which is the basis of the judgment. On analysis of the judgment we find, first, that the court orders redistribution of the total number of shares of class B common stock issued in the name of plaintiff and defendant at the commencement of the action (plaintiff 281, defendant 1138) to give plaintiff 709 shares and defendant 710. It would seem that if plaintiff from the first was entitled to share equally with defendant in said stock, the court should have based the division on the 1200 shares originally issued to defendant, rather than on the number of shares, to wit, 1138, remaining after transfer of approximately 60 to the Meckfessels. The judgment perpetually enjoins defendant from ever owning more than one share in excess of the number owned by plaintiff.

Secondly, the court adjudges that plaintiff and defendant have shared equally in the business and proceeds of the cor-

poration as of November 17, 1927. The evidence showed that no dividends had been paid, and that plaintiff and defendant had received equal salaries of $35 a week. Although the date stated, November 17, 1927, is the date of commencement of the corporate business, we construe this provision as adjudging that the parties had shared equally for the period from November, 1927, to April, 1930, covered by the accounting rendered by the accountants appointed by the court. The effect of this provision of the judgment, considered together with certain findings, is to decree equal division of future profits and proceeds.

Although the court by its findings sustains the right of plaintiff to share jointly and equally with defendant in the management and control of the business, the judgment proper contains no express provision restoring him to joint control.

Furthermore, although the court on the basis of its finding of equality in all things, ordered approximately equal division of the class B common stock, and equal division of profits and proceeds, it did not redistribute the preferred stock. Plaintiff owns 280 shares of this stock, and defendant originally owned 200 shares, and now owns 140, having transferred 60 shares to the Meckfessels. All preferred stock was issued for value received equivalent to the par value of the stock, as previously noted, and the trial court has sustained said issue of stock, and on the record before us we find it to be just and proper. By the articles of incorporation eight per cent cumulative dividends are required to be paid on preferred stock before any dividends are paid on common stock. It would follow that the profits and proceeds remaining after payment of expenses, instead of being divided equally between plaintiff and defendant, should be paid to them as dividends on preferred stock in proportion to the number of shares owned by each. There is an inconsistency, contradiction and uncertainty in the judgment before us which upholds the issue of an unequal number of shares of dividend-paying stock, but nevertheless seems to decree equal division of all proceeds of the business.

Furthermore, certain provisions of the findings very plainly sustain the right of plaintiff to resume equal control with defendant in the active management of the business, as in a partnership. Yet defendant is given 710 shares of

voting stock, and plaintiff 709, which would seem to uphold defendant's contention that he was to have voting control. Here, again, there is uncertainty in the judgment.

The exclusion of plaintiff from joint control, according to his testimony, was the main grievance which led him to bring action. Although, as noted above, the judgment proper does not expressly decree that he be restored, nevertheless when considered with reference to the findings it would seem to have that effect. If plaintiff and defendant were to exercise joint and equal control as in a partnership, the proper procedure would be for the court to decree dissolution and liquidation—as in the case of a partnership—rather than to decree continuance of an impossible relationship by court order.

We conclude that the judgment and findings as they stand are uncertain and contradictory and fail to define in an effective manner the interests of the respective parties in the corporation, its stock, the proceeds of its business and in its management. The effect would seem to be to superimpose a partnership on a corporation while maintaining inconsistent features of each type of business organization. We have hesitated because of the additional cost that will be involved to send the case back for retrial, but in the state of the record we cannot undertake to revise the findings and judgment. It may be that the business entanglements of the parties will be settled by themselves without further expense.

The judgment is reversed.

Curtis, J., Langdon, J., Preston, J., Thompson, J., and Waste, C. J., concurred.