[Civ. No. 4413. Fourth Dist. Nov. 19, 1951.]

RUSHFORD A. KITTLE, Respondent, v. W. E. LANG, Appellant.

Kenneth W. Kearney for Appellant.

Willis Smith for Respondent.

GRIFFIN, J.—Plaintiff's complaint alleges that for many years prior to October 1, 1949, he had been in the sporting goods business in Bishop, and had built up a valuable good will; that from October 1, 1948, to October 1, 1949, he managed such a store for another and earned $240 per month; that prior to October 1, 1949, defendant represented to plaintiff that he was anxious to enter into the sporting goods business; that defendant would invest his money in such a store if plaintiff would engaged in business with him; that a

partnership would be formed and plaintiff would have a one-half interest in the business, plus $50 per week to be deducted as business expense; and that profits would be reinvested in the business.

It is then alleged that it was further orally agreed that as a part of the agreement, plaintiff was to devote his full time to the business and to furnish certain equipment worth $1,500, plus the good will, as his contribution to the partnership to be formed; that defendant would furnish the money, be a silent partner, and that articles of copartnership would be drawn accordingly.

It is then alleged that plaintiff believed defendant's representations, agreed to enter into such a contract; that he resigned from his position, removed $1,500 worth of supplies to a building leased for the purpose of conducting the business, and devoted his full time to it; and that he was ready, willing and able to perform his part of the contract.

In paragraph V it is alleged that on October 1, 1949, the parties leased a building and started up business; that defendant furnished the money and plaintiff furnished his equipment and time; that the name of the business was Rush-Kittle's Sportsman's Supplies; that business permits were issued and a profit resulted; and that plaintiff drew no pay except $868. It is then alleged that plaintiff demanded that defendant perform his contract; that he failed to do so; and that he failed to pay plaintiff's salary. It is then charged that in March, 1950, the parties moved to a new location; that plaintiff devoted his full time to establishing the business and performing his agreement; that since that date defendant denied that plaintiff was entitled to a one-half interest in the business, refused to pay his salary, and refused to enter into articles of copartnership; and that plaintiff offered to compromise with defendant for a salary of $50 per week and a one-fourth interest in the business but defendant refused to do so. It is then alleged that defendant was using plaintiff's name, his tools and equipment, and that upon defendant's refusal to recognize plaintiff's rights or to pay him a salary, plaintiff left the business on April 15, 1950.

In paragraph IX he alleges that prior to April, 1950, defendant orally represented that he would make plaintiff a partner; that he made the representations in bad faith with the intent to deceive plaintiff and to induce him to conduct defendant's business for him; that plaintiff believed the repre-

sentations, devoted his time, tools and good will to defendant's business, and that thereafter a profitable business was established; that plaintiff was given no interest in the business, paid no salary (except $868) and that there was an entire failure and refusal on the part of defendant to perform his agreement. Plaintiff then prayed for damages, alleged that the business was worth $20,000 and that by being deprived of a one-half interest he was damaged in the sum of $10,000; that the profits would have been at least $10,000, and therefore he was damaged in the sum of $5,000; that defendant deprived plaintiff of his tools and equipment to his damage in the sum of $1,500; that he was deprived of wages for 2,320 hours to his damage in the sum of $2,320; that plaintiff lost good will damaging him in the amount of $5,000. The general prayer is for damages in the sum of $23,820, and for such other and further relief as may to the court seem proper.

Defendant's answer contains general denials of the allegations contained in plaintiff's complaint and sets up as an affirmative defense that plaintiff executed and delivered to defendant a certain quitclaim deed which it was alleged constituted a release of defendant from any obligation whatsoever that might have existed between himself and plaintiff. (Plaintiff filed an affidavit denying the "genuineness of said written instrument" under Code Civ. Proc., § 448.) He also pleaded failure of consideration.

After trial by the court it found that about October 1, 1949, the parties entered into an oral agreement to establish the said business; that plaintiff would devote his full time to the interest of the business and furnish certain equipment, tools and supplies owned by him, as "fully described in plaintiff's Exhibit I herein"; that plaintiff was to act as manager and receive $50 per week in addition to a salary, and a one-half interest in the business; that plaintiff performed the agreement, furnished the labor for the benefit of the business amounting to 2,320 working hours; that defendant paid plaintiff $868 on account of that work but that defendant refused to comply otherwise with the terms of the oral agreement; that plaintiff continued to render services for the benefit of defendant and said business at all times prior to the removal of same to a location on Main Street, at which time plaintiff and defendant mutually agreed to terminate the purported agreement to form a partnership and that from and after the removal of said business to the new location plaintiff took over the operation and management of

the bicycle repair work of said business and from and after that date defendant took over the management and operation of the sporting goods business; that at no time prior to the removal were any profits made in that business for a division between the parties; that defendant neglected to recognize any interest of the plaintiff in the business prior to its removal to its present location, and has appropriated the whole thereof to his own use and benefit to the exclusion of plaintiff; that the work, labor, and services rendered by plaintiff prior to the removal of said business were reasonably worth $2,320; that $868 has been paid on this account and that there now remains owing to plaintiff for said work and labor $1,452.

The court then found that defendant was in possession of "certain items of machinery, equipment . . . more particularly described in plaintiff's exhibit I herein," which are the property of plaintiff.

In addition, it found that defendant had collected "certain sums of money on behalf of plaintiff, as more particularly appears from defendant's testimony herein," and that plaintiff is entitled to any and all of said sums of money so collected by defendant.

The court then found that the allegations contained in paragraph X(d) of plaintiff's complaint, i.e., "that by said breach on the part of defendant of the contract aforesaid, plaintiff was deprived of wages and earnings for labor and services rendered to defendant for a period in excess of 2320 working hours at a reasonable wage of One Dollar per hour, all to the damage of plaintiff in the sum of Two thousand three hundred twenty ($2320.00) dollars" were true, but that the other allegations contained in paragraph X were untrue. These allegations relate to the other claimed items of damage.

In relation to the affirmative defenses alleged by the defendant, the court found that on November 15, 1949, plaintiff executed and delivered to defendant the quitclaim deed above mentioned, but that the instrument was not executed and delivered for the purpose of transferring to defendant the machinery, equipment, tools and supplies described in "plaintiff's exhibit I herein" or for the purpose of waiving any of the rights of plaintiff for compensation for work, labor and services rendered to the business conducted by the plaintiff and defendant and that thereby the machinery and supplies were not transferred to the defendant and that the plaintiff did not thereby waive his right to compensation for work as aforesaid, and that defendant was not released from his obligation

to compensate plaintiff for his work or to return plaintiff the machinery and supplies aforesaid. The court then found that the defense of failure of consideration was untrue, and further found that the fourth separate defense, which included all of the allegations of paragraph I herein set forth as to the oral agreement, the execution of a quitclaim deed releasing defendant from any obligation, and that plaintiff waived any right he had under the oral contract, was untrue.

The court then concluded (1) that plaintiff was entitled to judgment against defendant in the sum of $1,452; (2) that he was entitled to judgment for the immediate delivery and return "of all of the machinery, equipment, tools, and supplies listed in plaintiff's Exhibit I, which are now in the possession of the defendant"; and (3) that plaintiff was entitled to judgment for the immediate delivery "of any and all sums of money collected by defendant, and by him held for and on behalf of plaintiff." Judgment was entered accordingly, and in this same language.

It is appellant's contention that from the pleadings it is obvious that the action, as filed, was an action for damages for breach of contract which culminated in a judgment "which seems to be an effort to do some sort of sagebrush equity" and in violation of the issues involved; that the findings of fact do not follow the allegations of the complaint and that there is a total lack of evidence to support most of them.

It is true that the allegations in reference to the damages sustained and the prayer for relief might presuppose the complaint was predicated upon an action for damages for the breach of the claimed oral agreement. However, certain allegations of the complaint indicate that the parties hereto did orally agree to enter into a partnership arrangement and that certain division of the profits was to be made. It likewise appears that the parties did, in fact, under the oral agreement, carry out many of the provisions of that agreement and did, in fact, enter into a partnership venture and that the parties held themselves out as partners, doing business as such, over a period of many months. In an action against these parties for some obligation created by one or the other in the conduct of the business during this period, it would be properly held that they would be liable as partners. It should also be noted that plaintiff alleged that a profit resulted and that he was deprived of his wages in the sum of $2,320, and that plaintiff furnished $1,500 worth of

tools and supplies "as a contribution to such business." Practically the only feature of the partnership agreement that was lacking was the execution of a *written agreement* in accordance with the oral agreement alleged and under which they apparently were operating. This is the practical effect of the finding of the court on this subject. It found that the parties mutually agreed to terminate that purported agreement and that they entered into a new and different arrangement when the parties moved to the Main Street location and that no partnership arrangement existed thereafter. It found that defendant had appropriated all of the interests of the parties acquired under the partnership arrangement to his own use and benefit and to the exclusion of plaintiff. The court, by its findings and judgment, under the prayer for general relief, has apparently construed the action as an equitable proceeding in which the parties set up their respective interests in the partnership business which was being operated as such. It determined that such partnership no longer existed and it has made what appears to be an equitable distribution of the assets and has charged defendant with a reasonable amount for time expended by plaintiff in the management and operation of the business by plaintiff over the period in question. The case, as is apparent from the record, was tried upon this theory. No objection was made to the introduction of any evidence on the ground it was not relevant to the issues presented by the complaint or by the pleadings. It should be further noted that the court assumed jurisdiction over defendant's claimed defense that a quitclaim deed, signed by plaintiff, constituted a release of the property to defendant's wife, which written instrument was claimed by plaintiff to be ineffectual, i. e., it was not genuine for the reason it was not the identical instrument it purported to be and did not appear in the exact form in which it was executed. Under the equitable powers of the trial court it took considerable testimony on the subject which showed that plaintiff was a judgment debtor in another action; that a levy of execution on the partnership property was threatened and that to defeat a recovery by this creditor defendant took the quitclaim deed without a consideration and for the purpose of falsely showing that plaintiff had no interest in the business. The court determined this issue in favor of plaintiff, insofar as it applied to defendant's claim to the tools and to his waiver of wages due under the agreement. Apparently, defendant believed the proceeding was an equitable one, or he was, at least, in doubt as to its nature, because his appeal from the

judgment was to the Supreme Court, rather than to this court. (The case was subsequently assigned to this court for decision.)

 The general rule is stated in 14 California Jurisprudence, page 990, section 69, to be:

"Since there is but one form of civil action under the code the court may grant any relief embraced within the issues. The fact that a party has misconceived the relief to which he is entitled does not alone justify a total denial of relief, but a plaintiff may recover if his complaint states any cause of action entitling him to any relief either at law or in equity. In other words, the court will render such judgment as the evidence and pleadings show the parties are entitled to, regardless of the form of the action or the prayer of the complaint." (See, also, *Fong Sing* v. *O'Dell*, 50 Cal.App. 55 [194 P. 745]; and *Horan* v. *Consolidated etc. Min. Co.*, 41 Cal.App. 333 [182 P. 813].)

 It does not appear that defendant may now be heard to complain for the first time on appeal since it appears that there was a prayer for general relief and since the decision was founded upon issues within the general scope of the case made by the pleadings and within the issues actually tried and to which no objection was interposed. (14 Cal.Jur. p. 974, § 62; *Poledori* v. *Newman*, 116 Cal. 375 [48 P. 325]; *Mock* v. *City of Santa Rosa*, 126 Cal. 330 [58 P. 826].)

There was evidence that plaintiff agreed to furnish his full time and to manage the business as a part of his contribution to the partnership. Defendant took no active part in it but claims he invested as much as $21,000 in the project. Plaintiff estimated his time at approximately "12 hours per day. more or less," commencing October 8, 1949, until the dissolution of the agreement, which time totaled 2,320 hours at $1.00 per hour. The court gave plaintiff credit for this amount, less the sum of $868, admittedly paid to plaintiff by defendant. The finding and judgment allowing plaintiff $1,352 for this purpose is supported by the evidence and pleadings.

The finding that plaintiff was entitled to the machinery, equipment, tools and supplies which he furnished "as a contribution to the business" has evidentiary support. However, the judgment that defendant deliver "such equipment" as "listed in plaintiff's Exhibit I," which are now "in the possession of the defendant" is somewhat lacking in definiteness. Defendant argues that it would be difficult for an enforcing officer to carry this portion of the judgment into effect under a writ of execution. Exhibit I consists of an itemized list of

the equipment and its appraised value, which equipment plaintiff claimed was turned over to the partnership by him. He testified in detail as to each item, and said that defendant looked at the catalogue with him and agreed that its value was $1,500. At the conclusion of this testimony counsel for defendant stipulated that the list might be accepted in evidence and marked plaintiff's Exhibit I, and that it was the list of articles and their value which plaintiff claimed he furnished to the partnership. This exhibit is in the record before us.

It is true that findings, as well as the judgment based thereon, should be definite and certain. At least they should be sufficiently clear and definite to enable a party to comply with their requirements. (*Kling* v. *Gustason,* 101 Cal.App. 58 [281 P. 407]; *Johnson* v. *Farmer,* 41 Cal.App.2d 874 [107 P.2d 959, 108 P.2d 945]; *Young* v. *Enfield,* 217 Cal. 662 [20 P.2d 701].) The judgment here involved is merely an order to the defendant to turn over to plaintiff such part of the personal property assets of the partnership now in defendant's possession as are described in Exhibit I, which exhibit is made a part of the findings and judgment by reference. Defendant admitted he still had in his possession much of this equipment but claimed title to it under the terms of the quitclaim deed, which deed the court found was ineffective as to this particular personal property.

As between the parties to this action, we believe the findings and judgment, in this respect, are sufficiently clear and definite to enable defendant to comply with its requirements. (*Queen* v. *Queen,* 44 Cal.App.2d 475 [112 P.2d 755]; *Newport* v. *Hatton,* 195 Cal. 132, 156 [231 P. 987]; 49 C.J.S. p. 203, § 80.)

As to the finding and judgment for the payment of money, a stricter rule seems to prevail, i. e., that a judgment for money must be stated with certainty and should specify the amount. (*D'Arcy* v. *D'Arcy,* 89 Cal.App. 86, 92 [264 P. 497]; 14 Cal.Jur. p. 956, § 53; 1 Freeman on Judgments, 5th ed. § 84, p. 148; *Wallace* v. *Wallace,* 111 Cal.App. 500 [295 P. 1061].) The portion of the finding reciting that "Defendant has collected certain sums of money on behalf of plaintiff, as more particularly appears from defendant's testimony herein, and that plaintiff is entitled to any and all of said sums of money so collected by defendant," and the judgment entered thereon that plaintiff "is entitled to judgment for the immediate delivery of any and all sums of money

collected by defendant, and by him held for and on behalf of plaintiff" is quite uncertain as to the amount, to say the least. It refers to the testimony of defendant on this subject. We have examined the record and find that defendant testified that the division of profits ended with the execution of the quitclaim deed on November 15, 1949; that there was "less than" or "about" $75 came in for repair work after April, 1950; that a statement for repair work amounting to $1.50 had been mailed to a school district but said bill had not been paid. He then said that plaintiff was "entitled to $6.00" and that he was willing for plaintiff to "come and get those things," and "I am willing to give it to him." It may have been clear to the scrivener of the findings and judgment how much was due plaintiff under that testimony, but it certainly is not clear to this court what amount was intended by the judgment. This portion of the judgment is too indefinite and uncertain to be enforced. (*Hand* v. *Twin Falls County,* 40 Idaho 638 [236 P. 536]; 49 C.J.S. p. 198, § 76.)

That portion of the judgment ordering defendant to deliver to plaintiff "all sums of money" held by him "for and on behalf of plaintiff" is reversed. The remaining portion of the judgment is affirmed. Each party to pay his own costs on appeal.

Barnard, P. J., and Mussell, J., concurred.