Filed 9/18/24  South Dist. Union etc. v. First United Methodist Church etc. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SOUTH DISTRICT UNION OF THE CALIFORNIA-PACIFIC ANNUAL CONFERENCE OF THE UNITED METHODIST CHURCH,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>FIRST UNITED METHODIST CHURCH OF HUNTINGTON BEACH et al.,<br><br>    Defendants and Appellants. | G062996<br><br>(Super. Ct. No. 30-2022-01292333)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Melissa R. McCormick, Judge. Affirmed.

Matt Cortez Law and Matt P. Cortez for Defendants and Appellants.

Baker & Hostetler, Daniel Friedman Lula and Shaia Araghi; Rimon Law and Daniel Friedman Lula for Plaintiff and Respondent.

\*        \*        \*

The local governing body of The United Methodist Church, the California-Pacific Annual Conference of The United Methodist Church (the California-Pacific Conference), decided to close appellant First United Methodist Church of Huntington Beach (Surf City), a local church in Orange County. After the California-Pacific Conference voted to close Surf City, it appointed respondent South District Union of the California-Pacific Annual Conference of the United Methodist Church (South District) to take possession of Surf City's property. South District brought this action asserting claims for quiet title and declaratory relief, among others, seeking to obtain title to Surf City's real and personal property. The trial court granted summary adjudication in favor of South District on these two claims. South District dismissed its remaining claims, and the court entered judgment in its favor (the initial judgment). The court later entered an amended judgment in favor of South District (the amended judgment).

Surf City filed a notice of appeal more than 60 days after South District gave notice of entry of the initial judgment. South District argues the appeal is untimely, so we need not address the merits of Surf City's argument. We disagree. The amended judgment made substantial modifications to the initial judgment. Thus, South District's deadline to appeal ran from the amended judgment, not the initial judgment, and is timely.

As to the merits of its appeal, Surf City argues South District failed to show it had standing to bring its quiet title and declaratory claims. Surf City also argues there are questions of fact as to its affirmative defense that the California-Pacific Conference acted with unclean hands. We find no triable issues of fact exist as to either argument and affirm the judgment.

STATEMENT OF FACTS

I.

THE DENOMINATION

The United Methodist Church (the Denomination) is a Christian denomination formed in 1968 by the union of two churches. The Denomination does not have a central headquarters or single executive leader. It is divided into geographical subunits called annual conferences, which have been described as "the basic unit of the church." There are 54 annual conferences in the United States. Some, but not all, annual conferences are led by a resident bishop.

The annual conference covering Southern California is the California-Pacific Conference.[1] The California-Pacific Conference is subdivided into five geographic regions: the South, North, West, East, and Hawaii Districts. The South District geographic region (defined above as South District) is separately incorporated and headed by a district superintendent.

One of the Denomination's governing instruments is the Book of Discipline, which is its book of law. The Book of Discipline is the controlling document for the annual conferences and the local churches, including Surf City.

The Book of Discipline states that all local church property is held in trust for the benefit of the Denomination. It provides, "All properties of United Methodist local churches and other United Methodist agencies and institutions *are held, in trust, for the benefit of the entire denomination*, and

---

[1] Specifically, the record shows the California Conference covers Southern California, parts of Central California, Hawaii, the Pacific Islands, Guam, and Saipan.

3

ownership and usage of church property is subject to the Discipline." (Italics added.) "[T]itles to all real and personal, tangible and intangible property held . . . by a local church . . . shall be held in trust for The United Methodist Church and subject to the provisions of its Discipline. Titles are not held by The United Methodist Church . . . , but instead by the incorporated conferences, agencies, or organizations of the denomination, or in the case of unincorporated bodies of the denomination, by boards of trustees established for the purpose of holding and administering real and personal, tangible and intangible property." This "trust is and always has been irrevocable, except as provided in the [Book of] Discipline."

The Book of Discipline authorizes annual conferences to close local churches within their respective territories. It states, "Upon a recommendation by the district superintendent, and with the consent of the presiding bishop, a majority of the district superintendents, and the appropriate district board of church location and building, the annual conference may declare a local church closed. If the annual conference closes a local church, title to all the real and personal, tangible and intangible property of the local church shall immediately vest in the annual conference board of trustees, who shall hold said property in trust for the benefit of the annual conference."

II.

SURF CITY

Surf City has been part of the Denomination since 1968. It is within the territory of the California-Pacific Conference and South District. Surf City holds title to two parcels of real property in Huntington Beach (the real property). The first is Surf City's church building, which is located on Delaware Street. The second is a parsonage located on Le Conte Drive. Surf

4

City also owns certain items of personal property, including implements of worship, vestments, books, appliances, and bank accounts (the personal property).

By early 2022, Surf City's membership had purportedly decreased to only 15 active members, but it occupied "a very large physical footprint, with a significant amount of land and buildings." The district superintendent for South District and other leaders of the California-Pacific Conference determined that Surf City should be closed. On June 15 and 16, 2022, the California-Pacific Conference held its annual meeting with delegates from congregations within its territory. At this meeting, the delegates voted to close Surf City. The record contains a declaration from Dr. Grant Hagiya, the Resident Bishop of the California-Pacific Conference at the time of the vote. Dr. Hagiya averred the vote was fully effective to close Surf City under the Book of Discipline and the Denomination's polity and practice.

The California-Pacific Conference adopted a written resolution in connection with its vote to close Surf City (the resolution). The resolution "recognize[d] that the members of [Surf City] have over the last ten years explored numerous options for sustained ministry as a Chartered United Methodist [C]hurch, in accordance with the . . . Book of Discipline, and that the reality that the capacity to carry out an effective strategy for growth and renewal has ceased." It further stated, "the consent to discontinue [Surf City] has been granted by the presiding Bishop, and all of the District Superintendents." The resolution specified Surf City would "be discontinued as of June 30, 2022", and "South District . . . shall receive all assets and the titles of all properties owned and/or held in trust for the California-Pacific Conference by [Surf City]."

5

Surf City refused to accept its closure and refused to convey title to the real and personal property to South District.

PROCEDURAL HISTORY

South District filed suit against Surf City and its individual officers and directors in November 2022, alleging claims (1) to quiet title to the real and personal property, (2) for declaratory relief as to the ownership of the real and personal property as well as the control of the Surf City corporation, (3) for breach of fiduciary duty, and (4) for conversion. For purposes of this appeal, there is no need to distinguish between Surf City and the individual defendants, so we refer to them collectively as Surf City in this opinion.

South District later moved for summary adjudication as to its quiet title and declaratory relief claims, which the court granted. It found the undisputed facts showed South District owned all the real and personal property. It was unpersuaded by Surf City's argument that South District lacked standing to pursue these claims. The court explained, Surf City has "not presented any evidence disputing plaintiff's evidence that [the California-Pacific Conference] appointed South District as its agent and designee to take title to [Surf City's] real property."

After the court granted its summary adjudication motion, South District dismissed its remaining claims without prejudice. The court entered judgment on June 14, 2023, in favor of South District and against Surf City (defined above as the initial judgment). South District served notice of entry of judgment on Surf City that same day. Surf City filed their notice of appeal on August 15, 2023, which was 62 days after South District's notice of entry of judgment.

6

On October 18, 2023, we issued an order staying preparation of the record in this appeal. Our order noted that Surf City's notice of appeal was untimely, and "[u]nder California law, if an appeal is untimely, the appellate court has no jurisdiction to consider its merits and the appeal must be dismissed." (Citing *Sanchez v. Strickland* (2011) 200 Cal.App.4th 758, 762.) We requested the parties submit letter briefs addressing the timeliness of Surf City's appeal.

Surf City filed a brief explaining it had engaged its counsel on July 7, 2023, to handle this appeal. Surf City's counsel then filed several substitutions of attorney and a notice of appeal on July 13, 2023. According to Surf City's brief, its counsel received a call from a trial court clerk on August 15, 2023. The clerk stated there had been a glitch in the court's computer system that had prevented the substitutions of attorney and the notice of appeal from being processed. The clerk advised Surf City's counsel that the court needed to reject the notice of appeal so the system could process the substitutions of attorney. Surf City could then refile its notice of appeal, and it would be processed. According to its brief, Surf City complied with these instructions and refiled its notice of appeal on August 15.

South District's brief argued the deadline to appeal is jurisdictional, and Surf City's notice of appeal was untimely, its appeal should be dismissed.

After receiving the parties' briefs, we issued another order lifting the stay and allowing preparation of the record to resume. But we specified, "Nothing in this order prevents [South District] from raising any jurisdictional issues in its briefing."

Meanwhile, on June 22, 2023, South District filed a motion in the trial court to amend the initial judgment (motion to amend). It claimed the

initial judgment was deficient because it failed to identify the real and personal property it had been awarded. South District sought to add these details to the initial judgment.

On November 16, 2023, the trial court vacated the hearing on the motion to amend because the matter was "'stayed pending appeal.'" So, on November 20, South District filed a motion in this court for an order permitting the trial court to rule on the motion to amend. Surf City did not oppose the motion. Noting the lack of opposition, we granted South District's motion and issued a "limited remand to the trial court to rule on the pending motion to amend the [initial] judgment." We specified that "[if] the trial court grants the motion for an amended judgment, the appeal will proceed as if taken from the amended judgment." We also ordered South District to file a copy of the amended judgment if its motion was granted.

The trial court entered an amended judgment on December 18, 2023 (defined above as the amended judgment). South District filed the amended judgment in this Court a few days later.

DISCUSSION

I.

TIMELINESS OF THE APPEAL

We begin by addressing South District's argument that we lack jurisdiction to consider Surf City's appeal because it is untimely.

Generally, a notice of appeal must be filed within the earliest of (1) 60 days from when the superior court clerk provides notice of entry of judgment, (2) 60 days from when a party serves notice of entry of judgment, or (3) 180 days after entry of judgment. (Cal. Rules of Court, rule 8.104(a)(1).) "This time limit is jurisdictional: 'no court may extend the time to file a notice of appeal' [citation], and relief cannot be conferred by stipulation, waiver, or

8

estoppel [citation]. 'If a notice of appeal is filed late, the reviewing court must dismiss the appeal.'" (*Meinhardt v. City of Sunnyvale* (2024) 16 Cal.5th 643 , 649.)

Surf City filed its appeal more than 60 days after South District gave notice of entry of the initial judgment. However, Surf City contends the trial court's revisions in the amended judgment are substantive, therefore, we should calculate its deadline to appeal based on the amended judgment rather than the initial judgment. We agree.

If an amended judgment results in a "'substantial modification'" of the original judgment, "the revised judgment supersedes the original and becomes the final, appealable judgment in the action. [Citation.] If not, any changes are considered to relate back to the original judgment and the time to appeal runs from the entry of the first judgment." (*Ellis v. Ellis* (2015) 235 Cal.App.4th 837, 842 (*Ellis*).) A "'substantial modification'" is a revision that materially affects the parties' right to appeal. "'[T]he crux of the problem . . . is whether there is a substantial change in the rights of the parties such that allowing an amendment nunc pro tunc (relating back to the original judgment) would unfairly deprive them of the right to contest the issue on appeal. . . .'" (*Ibid.*)

"'For example, an order amending a judgment to reflect the correct name of a party . . . substantially changes the judgment and therefore starts a new appeal time period (for an appeal from the amended judgment).'" (*Torres v. City of San Diego* (2007) 154 Cal.App.4th 214, 222, italics omitted.) But "'[w]here the judgment is modified merely to add costs, attorney fees and interest, the original judgment is not substantially changed and the time to appeal it is therefore not affected.'" (*Ibid.*)

9

Here, the initial judgment is only half a page in length and fails to describe the real or personal property awarded to South District. It simply states (1) the court had granted South District's motion for summary adjudication as to the quiet title and declaratory relief claims, (2) South District had dismissed its remaining claims, and (3) "judgment is entered in favor of plaintiff South District . . . and against [Surf City] on [South District's] causes of action for quiet title and declaratory judgment."

The nearly two-and-a-half page amended judgment contains several material additions. It states that "[t]itle to all real and personal, tangible and intangible property held by or for the benefit of [Surf City] is quieted in [South District]." It includes detailed descriptions of the relevant parcels of real property. It also specifies the personal property awarded to South District includes "all furnishings, fixtures, vestments, sacred vessels, paraments, books, computers, office supplies, or any other property whatsoever owned by [Surf City]," and it lists the specific bank accounts awarded to South District.

The above amendments are substantial modifications. South District likely would not have been able to enforce the initial judgment against Surf City because it failed to identify the real and personal property it had been awarded. (See *Pleasant Valley Canal Co. v. Borror* (1998) 61 Cal.App.4th 742, 777; *Kittle v. Lang* (1951) 107 Cal.App.2d 604, 612; *Planing Mill Co. v. Roman Cath. Bishop* (1918) 179 Cal. 229, 231.) Indeed, South District conceded as much in its motion to amend.

Courts have found a substantial modification where "the trial court changed the judgment to reflect the correct name of the losing party on the nonsuit motion." (*CC-California Plaza Associates v. Paller & Goldstein* (1996) 51 Cal.App.4th 1042, 1049.) The situation here is comparable. In the

10

former scenario, the losing party's identity is clear from the underlying record even if it is not in the judgment. But the correct identity of the losing party is an essential part of a judgment, so, changing it constitutes a substantial change. (See *id*. at pp. 1048–1049.) Likewise, here, the specific real and personal property awarded to South District may have been clear from the underlying record. Still, it was an essential portion of the award that was not included in the initial judgment. The initial judgment was likely unenforceable without this information. (See *Pleasant Valley Canal Co. v. Borror*, *supra*, 61 Cal.App.4th at p. 777; *Kittle v. Lang*, *supra*, 107 Cal.App.2d at p. 612; *Planing Mill Co. v. Roman Cath. Bishop*, *supra*, 179 Cal. at p. 231.) Surf City went from having a judgment entered against it that was likely unenforceable to having an enforceable judgment entered against it. Thus, the modifications made to the amended judgment were substantial.[2] (See *Ellis*, *supra*, 235 Cal.App.4th at p. 842.)

Because substantial modifications were made, the amended judgment supersedes the initial judgment. (*Ellis*, *supra*, 235 Cal.App.4th at p. 842.) So, Surf City's deadline to appeal ran from the date of the amended judgment, not the initial judgment. (*Ibid*.) Though Surf City filed its notice of appeal prior to the amended judgment, there was no need for it to file a new notice of appeal after entry of the amended judgment. As stated in our order dated December 11, 2023, "[i]f the trial court grants the motion for an amended judgment, the appeal will proceed as if taken from the amended judgment." Thus, we treat Surf City's notice of appeal as filed immediately

---

[2] While South District's motion to amend classified the errors in the initial judgment as clerical mistakes, "'some corrections of clerical errors will substantially change the judgment.'" (*Ellis*, *supra*, 235 Cal.App.4th 837, 843.)

after entry of the amended judgment and find it timely. (See Cal. Rules of Court, rule 8.104(d)(2).)

## II.

### MERITS OF APPEAL

Surf City contends there are questions of fact as to whether South District has standing to quiet title and seek declaratory relief and whether the California-Pacific Conference acted with unclean hands. We are not persuaded by either argument.

*A. Applicable Law*

"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) "Summary judgment is appropriate only 'where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.'" (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.)

"[W]here the plaintiff has . . . moved for summary judgment—or, as in this case, summary adjudication—that party has the burden of showing there is no defense to a cause of action. [Citation.] That burden can be met if the plaintiff 'has proved each element of the cause of action entitling the party to judgment on that cause of action.' [Citation.] If the plaintiff meets this burden, it is up to the defendant 'to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto.'" (*S.B.C.C., Inc. v. St. Paul Fire & Marine Ins. Co.* (2010) 186 Cal.App.4th 383, 388.)

12

We review the trial court's summary adjudication ruling de novo. (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65.) Still, "our review is governed by a fundamental principle of appellate procedure, namely, that "'[a] judgment or order of the lower court is presumed correct,'" and thus, "'error must be affirmatively shown.'" [Citation.] Under this principle, [Surf City] bears the burden of establishing error on appeal, even though [South District] had the burden of proving their right to summary [adjudication] before the trial court." (*Arnold v. Dignity Health* (2020) 53 Cal.App.5th 412, 423.)

## B. South District's Standing

"'Plaintiffs have standing to sue if they or someone they represent have either suffered or are threatened with an injury of sufficient magnitude to reasonably assure the relevant facts and issues will be adequately presented.'" (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 55.) "A party lacks standing if it does not have an actual and substantial interest in, or would not be benefited or harmed by, the ultimate outcome of an action." (*City of Santa Monica v. Stewart* (2005) 126 Cal.App.4th 43, 59.)

South District established its standing. The undisputed facts show Surf City held its real and personal property in trust for the Denomination and subject to the authority of the California-Pacific Conference. Dr. Hagiya's declaration states Surf City is located within the territory of California-Pacific Conference and is subject to its authority. As such, Surf City "owed a duty to the [California-Pacific] Conference (and The United Methodist Church generally) to hold and use its property and funds for the furtherance of the United Methodist mission, in conformity with the Book of Discipline, and *to comply with directives of the* [*California-Pacific*] *Conference* and its authorized representatives." (Italics added.)

13

The record also shows that under the Book of Discipline, Surf City's real and personal property was "held in trust for The United Methodist Church and subject to the provisions" of the Book of Discipline. Likewise, Surf City's articles of incorporation state its general purpose and powers include holding real and personal property "in trust" to "be used, kept, maintained, and sold or otherwise disposed of for the use and benefit of the ministry and members of [Surf City], subject to the Discipline, laws, usages and ministerial appointments thereof, *and by the* [*California-Pacific*] *Conference* within whose bounds [Surf City] may lie."

The California-Pacific Annual Conference voted to close Surf City on June 15, 2022. The Book of Discipline provides that upon closure of a local church, title to its real and personal property "shall immediately vest in the annual conference board of trustees, who shall hold said property in trust for the benefit of the annual conference." Dr. Hagiya's declaration explains, "[i]t is the practice of the [California-Pacific] Conference, when a local church is closed, to appoint the relevant district (North, South, West, East, or Hawaii) as its agent and designee to take title to the local church's property . . . ." Accordingly, Dr. Hagiya avers that "[he], as officer of the [California-Pacific] Conference, appointed the South District its agent and designee to take title to all real and personal property of Surf City . . . ."

Similarly, Rev. Sandra Olewine, the district superintendent for South District, declares that after the vote to close Surf City, the California-Pacific Conference "appointed the South District its agent and designee to take title to all real and personal property of Surf City . . . ." There is also a writing documenting South City's authority to quiet title to the real and personal property. The resolution provides, "South District Union shall

14

receive all assets and the titles of the all [*sic*] properties owned and/or held in trust for the California-Pacific Conference by [Surf City]."

The above evidence shows that title to the real and personal property belongs to the California-Pacific Conference, which appointed South District to receive the assets on its behalf. Based on this evidence, South District met its burden to establish standing to bring the quiet title and declaratory relief claims. (See *Fladeboe v. American Isuzu Motors Inc.*, *supra*, 150 Cal.App.4th at p. 55.)

In response, Surf City's argument focuses on a portion of the Book of Discipline stating that title to a closed church's property "shall immediately vest in the annual conference *board of trustees*, who shall hold said property in trust for the benefit of the annual conference." (Italics added.) It asserts South District has not shown the California-Pacific Conference's *board of trustees* granted it authority to quiet title and take possession of the real and personal property. Rather, the record only shows the California-Pacific Conference directly designated South District to receive this property.[3]

However, Surf City has not cited any evidence showing that an annual conference cannot directly designate a party to receive a closed church's assets. Nor has it cited any evidence showing that a closed church's property can *only* vest in an annual conference's board of trustees. Indeed, the California-Pacific Conference does not appear to have a board of trustees. Surf City's opening brief concedes, "[t]here is no record of the existence of a

---

[3] Surf City argues this evidence shows South District has failed to meet its burden of establishing standing. But it is better characterized as evidence that potentially creates a triable issue of fact as to whether South District has standing. In any event, the result would be the same no matter how this evidence is characterized.

15

Board of Trustees of the [California-Pacific] conference." Surf City has not cited any evidence showing an annual conference must have a board of trustees or what procedure it should follow when receiving a closed church's property if no such board exists. We will not review the record and craft arguments on Surf City's behalf. (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277.) As such, Surf City has failed to show any error in the trial court's ruling.

## C. Unclean Hands

The doctrine of unclean hands "'demands that a plaintiff act fairly in the matter for which he seeks a remedy. He must come into court with clean hands, and keep them clean, or he will be denied relief, regardless of the merits of his claim.'" (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 685.) "'Not every wrongful act constitutes unclean hands. But, the misconduct need not be a crime or an actionable tort. Any conduct that violates conscience, or good faith, or other equitable standards of conduct is sufficient cause to invoke the doctrine.'" (*Ibid.*)

Surf City argues there are questions of fact as to whether the California-Pacific Conference acted with unclean hands when it closed Surf City. Specifically, it contends that under the Book of Discipline, it was allowed to have its members vote on whether to disaffiliate from the Denomination. Disaffiliation would have allowed Surf City to separate itself from the Denomination, remain open, and retain its real and personal property. Surf City claims the California-Pacific Conference prevented it from conducting such a vote before closing the church.

But the section of the Book of Discipline cited by Surf City shows disaffiliation from the Denomination is not a unilateral process. It is an extremely limited right. The Book of Discipline states, "Because of the

16

current deep conflict within The United Methodist Church around issues of human sexuality, a local church shall have a limited right . . . to disaffiliate from the denomination for reasons of conscience regarding a change in the requirements and provisions of the Book of Discipline related to the practice of homosexuality or the ordination or marriage of self-avowed practicing homosexuals as resolved and adopted by the 2019 General Conference . . . ."

If any local church wishes to disaffiliate with the Denomination for the above reasons, the Book of Discipline allows the church to conduct a meeting of its members to vote on disaffiliation, called a church conference. The church conference is held within 120 days *after the district superintendent calls for the church conference.*" (Italics added.) If such a church conference is called, notice of its location and time must be given to all the local church's members. At least two-thirds of the members present at the church conference must vote in favor of disaffiliation for it to pass.

The record shows Surf City only requested to disaffiliate from the Denomination after it was informed of its impending closure. Thus, Dr. Hagiya determined Surf City's claimed disagreement with the Denomination on homosexuality issues "was not genuine" and "asserted only in an attempt to prevent closure of [Surf City]." As such, Surf City was not given an option to disaffiliate from the Denomination.

Surf City has not cited any evidence showing the California-Pacific Conference was required to let its members vote to disaffiliate. Rather, the evidence shows it could only vote to disaffiliate if the district superintendent called for such a vote. Here, no vote was allowed because the California-Pacific Conference's leadership determined Surf City's alleged conflict with the Denomination on homosexuality was "not genuine." Surf City does not dispute this determination. And, even if it did, the trial court

17

could not resolve such a dispute. "[T]he First Amendment requires that civil courts must take care not to adjudicate questions of religious doctrine." (*Schofield v. Superior Court* (2010) 190 Cal.App.4th 154, 162.) "Civil courts cannot interfere in disputes relating to religious doctrine, practice, faith, ecclesiastical rule, discipline, custom, law, or polity." (*New v. Kroeger* (2008) 167 Cal.App.4th 800, 815.) Determining whether Surf City genuinely disagreed with the Denomination on issues of human sexuality involves questions of religious faith and practice. The court cannot resolve such a dispute.

## III.

### MOTION TO DISMISS

South District filed a motion to dismiss Surf City's appeal on grounds it is unsupported by the facts and case law and, therefore, is frivolous. We disagree and deny the motion.

"[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.) Courts must "avoid a serious chilling effect on the assertion of litigants' rights on appeal. Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win on appeal. An appeal that is simply without merit is *not* by definition frivolous and should not incur sanctions. Counsel should not be deterred from filing such appeals out of a fear of reprisals." (*Ibid.*)

While we are unpersuaded by Surf City's arguments, they are not so meritless as to render the appeal frivolous. Contrary to South District's

18

contentions, Surf City's standing argument is not clearly an ecclesiastical determination that cannot be challenged through the courts. While courts cannot resolve issues of church doctrine, they can decide church property disputes that do not involve doctrinal issues by applying "'"neutral principles of law."'" (*Episcopal Church Cases* (2009) 45 Cal.4th 467, 473.) Under this approach, courts can consider "the local church's articles of incorporation, the general church's constitution, canons, and rules, and relevant statutes." (*Ibid.*) Surf City's standing argument was not based on church doctrine. Rather, it argued the California-Pacific Conference had not complied with the Book of Discipline, which is akin to a general church constitution. Thus, its argument could be assessed applying neutral principles of law.

Further, though we disagree with Surf City's standing argument, it correctly pointed out that under the Book of Discipline a local church's real and personal property generally passes to an annual conference's board of trustees, which did not occur here. While we are not persuaded by the argument for the reasons above, it is not so meritless as to be deemed frivolous.

DISPOSITION

The judgment is affirmed. South District is entitled to its costs on appeal.


MOORE, ACTING P. J.

WE CONCUR:


GOETHALS, J.


GOODING, J.